Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*American Girl, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN GIRL, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> ZEMBRKA d/b/a WWW.ZEMBRKA.COM and WWW.DAIBH-IDH.COM; WWW.ZEMBRKA.COM; and WWW.DAIBH-IDH.COM <br><br> *Defendants* | **CIVIL ACTION No.** <br><br> **[PROPOSED] TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANTS' WEBSITES AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> **FILED UNDER SEAL** |

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or American Girl** | American Girl, LLC |
| **Defendants** | Zembrka d/b/a www.zembrka.com and www.daibh-idh.com; www.zembrka.com; and www.daibh-idh.com |
| **Shoplazza** | Shenzhen Dianjiang Technology Co., Ltd. d/b/a Shoplazza, a Chinese company, with addresses of 3rd Floor, Xindaxin Department Store, No. 95 Zhengyi Road, Wuhua District, Kunming and 4th Floor, Office Building 11, West Gate, Wutong Island, Baoan District, Shenzhen, and any and all affiliated companies, which operates an e-commerce platform, available at www.shoplazza.com, that enables users, and specifically, Chinese brands, to build websites, create online stores, and manage and market their businesses, among other things |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **Complaint** | Plaintiff's Complaint filed in the instant action |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Moore Dec.** | Declaration of Michael Moore in Support of Plaintiff's Application |
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiff's Application |
| **American Girl Products** | Plaintiff's line of dolls, books and doll accessories that are intended to teach girls important lessons about America's history and foster pride in the traditions of growing up as a female in America |

| **American Girl Registrations** | U.S. Trademark Registration Nos.: 2,200,654 for "AMERICAN GIRL" for goods in Class 28; 5,242,074 for ✯AmericanGirl for services in Class 35; 5,182,399 for ✯AmericanGirl for goods in Class 28; 4,602,105 for bitty✯baby for goods in Class 28; 6,048,795 for "JOSS" for goods in Class 28; 4,709,256 for "JULIE ALBRIGHT" for goods in Class 28; 2,664,434 for "KAYA" for goods in Class 28; 4,909,555 for "MARYELLEN" for goods in Class 28; 5,101,208 for "MELODY ELLISON" for goods in Class 28; 3,677,824 for "REBECCA" for goods in Class 28; and 3,499,063 for "SAMANTHA PARKINGTON" for goods in Class 28 |
|---|---|
| **American Girl Marks** | The marks covered by the American Girl Registrations |
| **Plaintiff's Website** | Plaintiff's fully interactive website available at www.americangirl.com |
| **Counterfeit Products** | Products bearing or used in connection with the American Girl Marks, and/or products in packaging and/or containing labels bearing the American Girl Marks, and/or bearing or used in connection with marks that are confusingly similar to the American Girl Marks and/or products that are identical or confusingly similar to the American Girl Products |
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.zembrka.com; and www.daibh-idh.com, along with the domain names associated therewith |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |

| | |
|---|---|
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any of Defendants' Websites (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong"), Stripe Payments Canada, Ltd. ("Stripe") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Counterfeit Products and and/or Defendants' Websites, including, without limitation, Shoplazza, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts, such as Cloudflare, Inc., domain name registrars, such as GoDaddy.com, LLC ("GoDaddy"), and domain name registries |

On this day, the Court considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products.[1]  Having reviewed the Application, Declarations of Michael Moore and Jason M. Drangel, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## FACTUAL FINDINGS & CONCLUSIONS OF LAW

1. Since at least as early as 1986, Plaintiff, a wholly-owned subsidiary of Mattel, Inc—a leading designer, developer, marketer, manufacturer and distributor of well-known children's toys—has helped young girls discover their sense of self through the joy of play.

2. Plaintiff is well-known for its enormously popular and successful American Girl Products, which are a coveted line of dolls, books and doll accessories that are intended to teach girls important lessons about America's history and foster pride in the traditions of growing up as a female in America, and are marketed and sold under the American Girl Marks.

3. While Plaintiff has gained significant common law trademark and other rights in its American Girl Marks and American Girl Products through its use, advertising and promotion, Plaintiff has also protected its valuable trademark rights by obtaining federal trademark registrations.

4. For example, Plaintiff is the owner of the American Girl Registrations, some of which are incontestable, covering the American Girl Marks, including U.S. Trademark

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

1

Registration Nos. 2,200,654 for "AMERICAN GIRL" for goods in Class 28; 5,242,074 for ✯AmericanGirl for services in Class 35; 5,182,399 for ✯AmericanGirl for goods in Class 28; 4,602,105 for bitty✯baby for goods in Class 28; 6,048,795 for "JOSS" for goods in Class 28; 4,709,256 for "JULIE ALBRIGHT" for goods in Class 28; 2,664,434 for "KAYA" for goods in Class 28; 4,909,555 for "MARYELLEN" for goods in Class 28; 5,101,208 for "MELODY ELLISON" for goods in Class 28; 3,677,824 for "REBECCA" for goods in Class 28; and 3,499,063 for "SAMANTHA PARKINGTON" for goods in Class 28.

5.   The American Girl Marks are currently in use in commerce in connection with American Girl Products.

6.   Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Product through Defendants' Websites.

7.   Defendants are using one or more of the American Girl Marks, or marks that are confusingly similar thereto, on Defendants' Websites.

8.   Defendants are not, nor have they ever been, authorized distributors or licensees of the American Girl Products.  Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the American Girl Marks, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the American Girl Marks.

9.   Plaintiff is likely to prevail on its Lanham Act claims at trial.

10.  As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the American Girl Marks;

b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for its American Girl Products; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the American Girl Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the American Girl Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the American Girl Marks and records relating thereto that are in their possession or under their control and/or (iv) change the host of Defendants' Websites and/or create new websites under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence.

11. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the American Girl Marks and to its reputation if a temporary restraining order is not issued.

12. Public interest favors issuance of a temporary restraining order in order to protect Plaintiff's interests in and to its American Girl Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as American Girl Products.

13. Plaintiff has not publicized its request for a temporary restraining order in any way.

14. Service on Defendants via electronic means is reasonably calculated to result in proper notice to Defendants.

15. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the American Girl Marks. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) of this Order, respectively, before requiring service on Defendants.

16. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.  Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

### I.   Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this Order, and for such further period as may be provided by order of this Court:

1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the American Girl Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the American Girl Marks;

2) directly or indirectly infringing in any manner Plaintiff's American Girl Marks;

3) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's American Girl Marks to identify any goods or services not authorized by Plaintiff;

4) using Plaintiff's American Girl Marks and/or any other marks that are confusingly similar to the American Girl Marks on or in connection with Defendants' Websites and/or

5

Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, offering for sale, sale and/or otherwise dealing in Counterfeit Products;

5) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

6) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' Websites or Defendants' Assets and the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

7) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

8) linking, transferring, selling and/or operating Defendants' Websites;

9) registering, trafficking in or using any domain names that incorporate any of Plaintiff's American Girl Marks, or any colorable imitation thereof; and

10) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(9) above, I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

2) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to Defendants' Assets and Defendants' Financial Accounts; and

3) knowingly instructing any person or business entity to engage in any of the activities referred to in subparagraphs I(A)(I) through I(A)(9), I(B)(1) through I(B)(2) above and I(C)(1) through I(C)(2) below.

C. IT IS HEREBY ORDERED, as sufficient cause has been shown, that the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) within five (5) days after receipt of service of this Order, providing services to Defendants, including, without limitation, those relating to the continued operation of Defendants' Websites;

2) permitting the transfer, sale and/or assignment of Defendants' Websites; and

3) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(9), I(B)(1) through I(B)(2) and I(C)(1) through I(C)(2) above.

## II. Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A. Defendants are hereby ORDERED to show cause before this Court in Courtroom _____ of the United States District Court for the Southern District of New York at 500 Pearl Street/40 Foley Square, New York, New York on _____, 2021 at _____ __.m. or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 2520, New York, NY 10165, Attn: Jason M. Drangel on or before_____, 2021.  Plaintiff shall file any Reply papers on or before _____, 2021.

C. IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

### III.     Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and shall provide written confirmation of such attachment to Plaintiff's counsel.

### IV.     Order Authorizing Bifurcated and Alternative Service by Electronic Means

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

   1) delivery of: (i) PDF copies of this Order together with the Summons and Complaint, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses, cs@zembrka.com and john83899@outlook.com.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial

9

Institutions and Third Party Service Providers' compliance with **Paragraphs III(A)** and **V(B)-(C)** of this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

1) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

2) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cloudflare, Inc. will be able to download a PDF copy of this Order via electronic mail to abuse@cloudflare.com;

3) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where GoDaddy will be able to download a PDF copy of this Order via electronic mail to abuse@godaddy.com and trademarkclaims@godaddy.com; and

4) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Shoplazza will be able to download a PDF copy of this Order via electronic mail to Shoplazza's Compliance Manager at feedback@shoplazza.com.

## V. Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a. their true name and physical address;

   b. the name and location and URL of any and all websites that Defendants own and/or operate;

  c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

  d. the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

  e. the steps taken by each Defendant, or other person served to comply with **Section I**, above.

2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and

account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Third Party Service Providers shall identify any and all of Defendants' Websites, and provide Plaintiff's counsel with a summary report, which shall include, at a minimum, identifying information for Defendants Websites (i.e., URLs), contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)  Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   a. account numbers;

   b. current account balances;

   c. any and all identifying information for Defendants and/or Defendants' Websites, including, but not limited to, names, addresses and contact information;

   d. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

    e.  any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    f.  any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' Websites, including, but not limited to, documents and records relating to:

    a.  account details, including, without limitation, identifying information and URLs for any and all accounts or websites that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

    b.  the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

    c.  the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' Websites, a full accounting of

   Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' Websites; and

 d. Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, or any other products bearing the American Girl Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the American Girl Marks.

## VI.   <u>Security Bond</u>

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of _____ Dollars (_____) with the Court, which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.   <u>Sealing Order</u>

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Michael Moore and Jason M. Drangel in support thereof and exhibits attached thereto and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(B)-(C)** of this Order.

**SO ORDERED.**

SIGNED this _____ day of _____, 2021, at _____ __.m.

                 _____
                 UNITED STATES DISTRICT JUDGE