Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*American Girl, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN GIRL, LLC<br><br>*Plaintiff*<br><br>v.<br><br>ZEMBRKA d/b/a WWW.ZEMBRKA.COM and WWW.DAIBH-IDH.COM; WWW.ZEMBRKA.COM; and WWW.DAIBH-IDH.COM<br><br>*Defendants* | **CIVIL ACTION NO.**<br>**21-cv-2372 (MKV)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), (b)(5), TO DISSOLVE TEMPORARY RESTRAINING ORDER AND TO OPPOSE ENTRY OF A PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. PROPER SERVICE AND PROCEDURAL HISTORY ....................................................... 2

III. ARGUMENT ........................................................................................................... 4

A. LEGAL STANDARD ................................................................................................ 4

B. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ..................... 5

*i. This Court Has Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)* ...................................... 5

*ii. This Court Has Jurisdiction Under N.Y. C.P.L.R. § 302(a)(3)(ii)* ................................. 9

*iii. Personal Jurisdiction Comports With Due Process* ...................................................... 12

C. SERVICE BY ALTERNATIVE MEANS IS APPROPRIATE AND WAS AUTHORIZED BY THIS COURT ........................................................................ 12

*i. Defendants Received Actual Notice* ............................................................................. 12

*ii. The Hague Convention Is Inapplicable Because Defendants' Addresses Were Unknown* ........................................................................................................... 13

IV. CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 U.S. Dist. LEXIS 72282 (S.D.N.Y. Apr. 30, 2018) .................................................................................. 5

*Audiovox Corp. v. S. China Enter., Inc.*, No. 11 Civ. 5142 (JS)(GRB), 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) ......................................................................................... 6

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ...................................................... 6, 8

*Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158 (2d Cir. 2010) .................................. 5, 8

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) 7, 8

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ............................................................................................................................. 9

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459 (LGS), 2016 U.S. Dist. LEXIS 89149, 2016 WL 3748480 (S.D.N.Y. July 8, 2016) .............................................. 6

*Mattel, Inc. v. Adventure Apparel*, 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 15, 2001) ......... 8

*Mattel, Inc. v. AnimeFun Store*, 2020 U.S. Dist. LEXIS 77660 (S.D.N.Y. May 1, 2020) ............. 6

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................ 15

*Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, 2020 U.S. Dist. LEXIS 162529 (S.D.N.Y. Sep. 4, 2020) ............................................................................................................................................ 6

*Sae Han Sheet Co. v. Eastman Chem. Corp.*, 2017 U.S. Dist. LEXIS 173410 (S.D.N.Y. Oct. 18, 2017) ............................................................................................................................................ 4

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) ................................................................................................................................... 14, 15

*Smart Study Co. v. A Pleasant Trip Store*, No. 1:20-cv-1733 (MKV), 2020 U.S. Dist. LEXIS 80834 (S.D.N.Y. May 7, 2020) .................................................................................................. 6

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ................. 9

*Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 23, 2001) .................................................................................................................................. 10, 12

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ........................... 15

*Wafios Mach. Corp. v. Nucoil Indus. Co.*, 2004 U.S. Dist. LEXIS 13674 (S.D.N.Y. 2004) ....... 10

*Werst v. Sarar USA, Inc.*, No. 17-CV-2181 (VSB), 2018 U.S. Dist. LEXIS 44124 (S.D.N.Y. Mar. 16, 2018) ............................................................................................................................. 4

*Zhang v. Baidu.Com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013) ...................................................... 14

**Statutes**

N.Y. C.P.L.R. § 302(a)(1) .......................................................................................................... 5, 7

N.Y. C.P.L.R. § 302(a)(3)(ii) ......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(2) .................................................................................................................. 4

Fed. R. Civ. P. 4(k)(2) .................................................................................................................... 9

Plaintiff American Girl, LLC (hereinafter, "American Girl" or "Plaintiff"), through its undersigned counsel, hereby respectfully submits this Memorandum of Law in Opposition (hereinafter, "Opposition") to the Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), (b)(5), to Dissolve Temporary Restraining Order and to Oppose Entry of a Preliminary Injunction filed by Defendants seaborgy.com, vanadim.com, zembrka.com and daibh-idh.com (*Docket Entry No. 23*) (hereinafter, "Motion" and "Defendants", respectively).[1]

## I. INTRODUCTION[2]

Defendants, all of which reside in China, operate Defendants' Websites—highly interactive websites, which express prices in U.S. dollars, accept payment via U.S. payment processors, and are exclusively dedicated to the advertisement, marketing, promotion, offering for sale and/or sale of Counterfeit Products. Moore Dec., ¶ 21, Ex. C. Defendants have targeted an iconic American brand—*American* Girl—and have held themselves out as capable of shipping Counterfeit Products to consumers in the United States, including those in the State of New York. In fact, during the Show Cause Hearing, Defendants' counsel explicitly conceded that the Counterfeit Products are offered for sale and can be purchased by U.S. consumers, including those in the State of New York—one of Plaintiff's most important markets—via Defendants' Websites. Transcript of Show Cause Hearing, 17:3-12. Despite the foregoing, and that any disclaimer regarding shipping to the United States and/or New York specifically is deliberately absent from

---

[1] As stated on the record before Your Honor during the Order to Show Cause Hearing on April 14, 2021 ("Show Cause Hearing"), this action was filed against Defendant Zembrka d/b/a www.zembrka.com and www.daibh-idh.com; www.zembrka.com; and www.daibh-idh.com. Plaintiff then became aware of two (2) additional websites that met the definition of Defendants' Websites under the temporary restraining order; order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; order to show cause why a preliminary injunction should not issue; order authorizing bifurcated and alternative service; and order authorizing expedited discovery (the "TRO") (i.e., www.seaborgy.com and www.vanadim.com) (*Docket Entry No. 17*). Defendants have asserted that www.seaborgy.com and www.vanadim.com are separate entities; but nevertheless, have made their Motion on behalf of all Defendants.

[2] Where a defined term is referenced and not defined herein, the term should be understood as it is defined in the Complaint (*Docket Entry No. 6*).

1

Defendants' Websites, Defendants appear to be engaged in a fraudulent scheme whereby they permit consumers, including those in the State of New York, to place orders, and then process the payment and data of such consumers, but never ship the Counterfeit Products. *See id.* at 17:18-18:1. Yet, the damage caused to Plaintiff is not only caused by the *shipment* of Counterfeit Products, but also, Defendants' Websites themselves—websites that are intentionally intended to look like they emanate from Plaintiff—and Defendants' advertisement, promotion and offering for sale of Counterfeit Products to consumers. It is clear that Defendants are attempting to evade the jurisdiction of U.S. courts; however, for the reasons set forth herein, as well as those in Plaintiff's Application, this Court is able to properly exercise jurisdiction over Defendants, and service of process was proper. Accordingly, Plaintiff respectfully requests that Defendants' Motion be denied, and that the Court enter a preliminary injunction against Defendants.

## II.     PROPER SERVICE AND PROCEDURAL HISTORY

Without Plaintiff's authorization, Defendants have, at a minimum, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold Counterfeit Products to consumers located in the U.S., including to consumers in New York and in this judicial district, through Defendants' Websites—fully interactive websites that indicate prices in U.S. dollars, through which Defendants accept payment via U.S. payment processors, such as PayPal—and have prominently featured the American Girl Marks thereon. Complaint, ¶¶ 27-28, 32, 33, Exs. C-D; Moore Dec., ¶ 21, Ex. C. Defendants have also marketed and/or promoted the Counterfeit Products to U.S. consumers through, at a minimum, social media platforms such as Facebook. Complaint, ¶ 33; *see also Declaration of Michael Moore and Accompanying Exhibit In Support of Plaintiff's Opposition to Defendants' Motion* ("Moore Dec. II"), submitted herewith, ¶ 3.

As a result, on March 18, 2021, Plaintiff filed this action for trademark infringement and counterfeiting of Plaintiff's American Girl Marks, and false designation of origin and unfair

competition (the "Action") and moved *ex parte* against Defendants for: 1) a temporary restraining order; 2) an order restraining assets and Defendants' Websites and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing alternative service; and 5) an order authorizing expedited discovery. *Docket Entry Nos. 13-16*. On that same day, the Court granted Plaintiff's Application and entered the TRO, including, without limitation, Plaintiff's request for an order authorizing alternative service by electronic mail. The TRO specified that service shall be made on Defendants and deemed effective as to all Defendants if it is completed by one of the following means:

> 1) delivery of: (i) PDF copies of this Order [the TRO] together with the Summons and Complaint, or (ii) a link to a secure website (including NutStore.com, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order [the TRO] together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order [the TRO] to Defendants' e-mail addresses, cs@zembrka.com and john83899@outlook.com.

*See* TRO, Section IV.

As reflected on the Certificate of Service, on March 26, 2021, Defendants were duly served with the Summons, Complaint, TRO and all documents filed in support of Plaintiff's Application pursuant to the alternative service authorized in the TRO. *Docket Entry No. 20*. Plaintiff used RPost's registered mail services in serving Defendants by email and received registered receipts from RPost confirming that the service emails and documents annexed thereto were sent to, delivered to and received by Defendants.[3] Copies of the RPost registered receipts confirming that

---

[3] Defendants were served with a link to a website created for this Action, as well as two links to download the pleadings, one Nutstore and one large mail link created through Rmail. Brownlee Dec., ¶ 17. After the TRO was entered, Plaintiff became aware of additional email addresses associated with newly identified Defendants' Websites, other than the two (2) email addresses specifically set forth in the TRO (cs@zembrka.com, john83899@outlook.com): cs@vanadim.com, z9886@outlook.com, cs@seaborgy.com, and z9887@outlook.com. The following email was then identified as associated with Defendants by GoDaddy: Barnett.wang@yahoo.com. Plaintiff served Defendants via all of the foregoing email addresses, and received delivery confirmations for all, with the exception of cs@zembrka.com.

the service emails were received by Defendants are annexed to the *Declaration of Kerry Brownlee In Support of Plaintiff's Opposition to Defendants' Motion* ("Brownlee Dec."), submitted herewith, as **Exhibit B**.  Furthermore, Defendants' counsel contacted Plaintiff's counsel's office on April 2, 2021, advising Plaintiff of Glacier Law PLLC's representation of Defendants in this Action.  Brownlee Dec., ¶ 19.

### III.    ARGUMENT

#### A.  LEGAL STANDARD

Defendants' Motion is a motion to dismiss (pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5)), as well as an application to dissolve the TRO, and an opposition to the entry of a preliminary injunction due to an alleged lack of personal jurisdiction and purported improper service.  On a motion pursuant to Fed. R. Civ. P. 12(b)(2), "[w]here no evidentiary hearing has been held, the plaintiff may meet the burden [of establishing personal jurisdiction] by pleading facts sufficient for a *prima facie* showing of jurisdiction." *Sae Han Sheet Co. v. Eastman Chem. Corp.*, 2017 U.S. Dist. LEXIS 173410, *5 (S.D.N.Y. Oct. 18, 2017).  "Pleadings and affidavits should be construed 'in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* (internal citation omitted).  "In considering motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(5), the court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether it has jurisdiction and service was proper." *Werst v. Sarar USA, Inc.*, No. 17-CV-2181 (VSB), 2018 U.S. Dist. LEXIS 44124, *5-6 (S.D.N.Y. Mar. 16, 2018).

With respect to a preliminary injunction, "[a] district court is 'powerless to proceed' on a motion for preliminary injunction 'in the absence of personal jurisdiction.'" *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 U.S. Dist. LEXIS 72282, *4-5 (S.D.N.Y.

---

Brownlee Dec., ¶ 15.

4

Apr. 30, 2018) (internal citation omitted). "'In order to obtain a preliminary injunction, a plaintiff must make more than a 'prima facie showing of jurisdiction,' and must instead demonstrate 'a reasonable probability of ultimate success' on the issue of personal jurisdiction.'" *Id.* at *5 (internal citations omitted).

### B.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

In granting the TRO, this Court soundly determined that it has personal jurisdiction over Defendants. As articulated in Plaintiff's Application, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under both N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3)(ii). *Docket Entry No. 14*, p. 13 of 33.

#### i.   *This Court Has Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)*

Under N.Y. C.P.L.R. § 302(a)(1), Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access said website from anywhere and purchase products. *See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 169-71 (2d Cir. 2010). As discussed in Plaintiff's Application, Plaintiff's counsel purchased Counterfeit Products from Defendants' Websites for delivery in New York, and received confirmations of all such purchases from Defendants. Drangel Dec., ¶¶ 13-14, Ex. A; *see also* Brownlee Dec., ¶ 9, Ex. A. While the Counterfeit Products have not been shipped to Plaintiff's counsel in New York, this is of little to no consequence,[4] given that courts in the Second Circuit have found that "[t]he *offering for sale* of even one copy of an allegedly infringing item, <u>even if no sale results</u>, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3."

---

[4] It also must be noted that test buys were made in mid-March, and Plaintiff's counsel did not receive any indication whatsoever that its orders may not be fulfilled. *See* Drangel Dec., ¶¶ 13-14, Ex. A; *see also* Brownlee Dec., ¶ 9, Ex. A. It was not until April 10, 2021 (i.e., nearly one month later, and only after Defendants presumably sought the advice of counsel) that Plaintiff's counsel was refunded for such orders. Brownlee Dec., ¶¶ 19-20, Ex C.

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009) (emphasis added); *see also Smart Study Co. v. A Pleasant Trip Store*, No. 1:20-cv-1733 (MKV), 2020 U.S. Dist. LEXIS 80834, *8 (S.D.N.Y. May 7, 2020) (wherein Your Honor found personal jurisdiction was appropriate because "Defendants operate a 'highly interactive website' from which consumers in New York can purchase the allegedly infringing goods at issue", regardless of the fact that products were not ordered from, or shipped by, all Defendants); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459 (LGS), 2016 U.S. Dist. LEXIS 89149, 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("A website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)"); *Mattel, Inc. v. AnimeFun Store*, 2020 U.S. Dist. LEXIS 77660, FN 7 (S.D.N.Y. May 1, 2020) (wherein Judge Preska found that "the Court would have no trouble concluding that it possesses personal jurisdiction" over the Defendants when Plaintiff's investigator confirmed that Defendants offered counterfeit goods for sale in New York and provided for shipping to New York, "a fact that the Court of Appeals has noted is 'sufficient,' even in the absence of any resulting sales, to provide for personal jurisdiction over the alleged infringer under N.Y. CPLR Section 302(a), i.e., the New York long-arm statute"); *Audiovox Corp. v. S. China Enter., Inc.*, No. 11 Civ. 5142 (JS)(GRB), 2012 U.S. Dist. LEXIS 104656, *9 (S.D.N.Y. Jul. 26, 2012) ("[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction."); *Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, 2020 U.S. Dist. LEXIS 162529 (S.D.N.Y. Sep. 4, 2020) (rejecting Defendants' argument that the fact that the orders were never fulfilled deprived the Court of personal jurisdiction, given that fulfillment is not dispositive since the offering for sale of an allegedly infringing item, even if no sale is

consummated, is sufficient under § 302(a)(1)); and *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) (finding personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online for digital copies).

In their Motion, Defendants do not deny (nor can they) that they operate highly interactive websites, but instead, solely rely on case law that is over a decade old, all of which pre-dates the cases cited directly above, to suggest that their maintenance of highly interactive websites is purportedly insufficient to give rise to personal jurisdiction, given that "Defendants [allegedly] do not regularly conduct, transact and/or solicit business in New York" (Motion, pp. 5-6). Yet, Defendants' argument misses the mark for a plethora of reasons, including that regular or systematic conduct is *not* required in order to satisfy N.Y. C.P.L.R. 302(a)(1).[5] Instead, under N.Y. C.P.L.R. § 302(a)(1), which is a "single act statute", a nonresident "transacts business" when it purposefully avails itself of the privilege of conducting business in New York, and the cause of action arises from such a transaction of business in New York. *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606, *7 (S.D.N.Y. May 1, 2016). Here, Defendants maintain fully interactive websites through which customers, including those located in the U.S., and in the State of New York, can place orders, including by inputting their billing information, shipping addresses, and contact information, and such customers are then sent confirmations of such orders by Defendants. Complaint, ¶¶ 27-28, 32, Exs. C-D; Moore Dec., ¶ 21, Ex. C; Drangel Dec., ¶¶ 13-14, Ex. A. Defendants maintain that they "have never shipped/sold any alleged infringing product to anywhere including New York" (Motion, p. 6), and that Defendants' Websites "were accessible from New York, as well as everywhere else" (Motion, p. 6). However, Defendants'

---

[5] Defendants further nonsensically state that "Defendants do not have continuous and systematic general business contacts in Illinois, *Id.*, so this Court should focus on the specific-jurisdiction inquiry." Motion, p. 6. Plaintiff has never asserted that this Court can exercise general personal jurisdiction over Defendants, and the relevant locale here is New York, not Illinois.

7

Websites do not inform consumers that Defendants will not ship out the Counterfeit Products. *See* Moore Dec., ¶ 21, Ex. C; *see also* Transcript of Show Cause Hearing, 17:18-23.  In fact, the order confirmations that were sent by Defendants to Plaintiff's counsel, in New York, explicitly indicate as follows: "[o]rder confirmed", "we're getting your order ready to be dispatched.  We will notify you when it has been shipped" Drangel Dec., ¶¶ 13-14, Ex. A; Brownlee Dec., ¶ 9, Ex. A.

Defendants do not contest that they have, at the very least: 1) advertised, marketed, promoted, and offered for sale the alleged Counterfeit Products via Defendants' Websites, as well as third party platforms such as Facebook, which Defendants have made available to consumers in New York; 2) allowed consumers, including those in the State of New York, to exchange information with Defendants via Defendants' Websites; and 3) processed the data of U.S. consumers, including those in the State of New York. *See* Complaint, ¶¶ 27-28, 32, 33, Exs. C-D; Moore Dec., ¶ 21, Ex. C; Drangel Dec., ¶¶ 13-14, Ex. A.  Regardless of whether or not Defendants have actually shipped Counterfeit Products to New York, it is indisputable that Defendants' Websites were set up to allow Plaintiff's counsel, in New York, to submit orders for Counterfeit Products, Defendants processed payment for such orders, and sent emails to Plaintiff's counsel in New York.[6]  Drangel Dec., ¶¶ 13-14, Ex. A; Brownlee Dec., ¶ 9, Ex. A.  Accordingly, it is clear that this Court may exercise personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1). *See, e.g., Grand*, 2016 U.S. Dist. LEXIS 61606, *9-10 ("Personal jurisdiction is proper under § 302(a)(1) because, in addition to the fact that Defendant transacted business within New

---

[6] In their Motion, Defendants allege that they "did nothing to target the forum. Any contact with New York, if present at all, was de minimis and manufactured by Plaintiff", and thus, they argue that specific jurisdiction is lacking.  Motion, p. 8.  Yet, the mere fact that Plaintiff's counsel placed the orders from Defendants is irrelevant, given that Defendants are the ones that have deliberately chosen to operate Defendants' Websites, which are accessible, and accept orders from, consumers in the State of New York. *See, e.g., Cartier*, 598 F. Supp. 2d 422 (finding the fact that purchases were made at Plaintiff's direction to be irrelevant to the question of purposeful availment); *Chloe*, 616 F.3d at 165 n.3; *Mattel, Inc. v. Adventure Apparel*, 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 15, 2001).

York, there is a substantial relationship between Plaintiff's trademark infringement claims and Defendant's interactive website.").

## ii.   *This Court Has Jurisdiction Under N.Y. C.P.L.R. § 302(a)(3)(ii)*

Alternatively, N.Y. C.P.L.R. § 302(a)(3)(ii) provides an independent basis for personal jurisdiction.[7]  As noted in Plaintiff's Application, the foregoing provision provides for personal jurisdiction over non-residents when "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." *Docket Entry No. 14*, p. 15 of 33; *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d. Cir. 2006).  Here, as further detailed in Plaintiff's Application, Defendants have committed the tortious acts of trademark infringement and counterfeiting (both within and without the State of New York), and this Action unequivocally arises from such acts. *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) ("in trademark infringement cases, the tort occurs 'where the passing off occurs,' that is, where the customer purchases the defendant's goods in the mistaken belief that they are the trademark owner's products.");[8] *Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist.

---

[7] Defendants erroneously suggest that Delaware or California would be more appropriate forums; however, at the same time, suggest that California would not have jurisdiction over Defendants (and do not address whether or not Delaware would). Motion, p. 10.  Defendants should not be able to evade the jurisdiction of U.S. courts by deliberately choosing to engage in a fraudulent scheme whereby they collect funds from U.S. consumers, but do not ship the Counterfeit Products.  Further, here, Defendants have targeted American Girl—*an iconic, quintessential American brand*.  Accordingly, as a third alternative, in the unlikely event that the Court finds that Defendants are not subject to jurisdiction in N.Y., or any other state, Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Intnationales Interieur GmbH*, 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

[8] It should be noted that a number of Plaintiff's consumers, whose precise residences are unknown, contacted Plaintiff regarding Counterfeit Products ordered from Defendants' Websites, advertisements from Defendants on social media, and/or Defendants' Websites generally.  Moore Dec. II, ¶¶ 3-4, Ex. A.

LEXIS 4870, *5-6 (S.D.N.Y. Apr. 23, 2001) ("[w]here an Internet site displays allegedly infringing marks, the tort is deemed to be committed where the website is created and/or maintained"); *see also Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, 2017 U.S. Dist. LEXIS 145453, *30 (S.D.N.Y. Aug. 31, 2017) ("trademark infringement constitutes a tort"). Importantly, Defendants do not contest that the first two (2) prongs are satisfied.

On the other hand, Defendants hastily, and erroneously conclude that "[t]he existence of the third element—an injury in New York—is not reasonably probable" since "Defendants have never manufactured, made, purchased in anywhere worldwide including New York" and "have never shipped/sold any alleged infringing product to anywhere including New York". Motion, p. 6. Once again, Defendants conveniently overlook the fact that they have, at the very least, advertised, marketed, promoted, and offered for sale the alleged Counterfeit Products via Defendants' Websites and social media to consumers in the U.S., and have accepted orders from at least one individual in New York. Complaint, ¶¶ 27-28, 32, 33, Exs. C-D; Moore Dec., ¶ 21, Ex. C; Drangel Dec., ¶¶ 13-14, Ex. A.[9] Plaintiff concedes that it was not organized under the laws of the State of the New York; however, as Defendants themselves acknowledge, potential lost sales or lost consumers in the New York market may qualify as injury in New York. Motion, p. 7. In fact, "in trademark infringement cases, the injury requirement is satisfied by harm and *threatened harm* resulting from actual *or potential confusion* and deception of internet users in New York

---

[9] Notably, entirely absent from Defendants' Motion are any details whatsoever regarding the number of orders received, and the funds collected from, consumers, in the U.S., including those in the State of New York, even if those orders were purportedly never fulfilled. Individuals that reside in New York, other than Plaintiff's counsel, may have placed orders for the Counterfeit Products; however, that information is solely within Defendants' possession. Further, Defendants have not confirmed, with certainty, that all funds collected from all consumers (in N.Y. or otherwise) were refunded. Accordingly, should the Court find that additional facts such as this are necessary to rule on Defendants' Motion, Plaintiff respectfully requests that it should be able to conduct jurisdictional discovery. *See, e.g., Wafios Mach. Corp. v. Nucoil Indus. Co.*, 2004 U.S. Dist. LEXIS 13674, *15 (S.D.N.Y. 2004) ("'Pre-motion discovery should be permitted where the facts necessary to establish personal jurisdiction and propriety of venue lie exclusively within the defendant's knowledge.'") (internal citation omitted).

State." *Energy Brands Inc.,* 571 F. Supp. 2d at 467 (emphasis added) (finding that "Glaceau also persuasively argues that its actual or potential New York customers were confused or deceived merely by viewing images of Spiritual Water products on defendants' website. This lends further support to a finding of injury within the state."); *see also Am. Network v. Access Am. / Connect Atlanta*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) (finding injury within New York when plaintiff claimed "harm and threatened harm in the New York market resulting from the confusion and deception of New York computer users").

Here, Plaintiff's well-known flagship store is located in New York City; Plaintiff's licensee, American Girl Brands, LLC is registered to do business in the State of New York; and perhaps most importantly, New York is a pivotal market for sales of the American Girl Products. Moore Dec. II, ¶¶ 6-9. In 2020, the New York market was the second highest market for Plaintiff's online and retail sales, and in 2019, it was number one. *Id.* at ¶ 9. In light of the sheer number of consumers from New York that search for American Girl Products online, as evidenced by Plaintiff's sales, it is reasonably probable that such consumers encountered Defendants' Websites, particularly when, as noted above, Plaintiff has specific evidence that a number of its consumers encountered, and expressed confusion regarding, Defendants' Websites. Moore Dec. II, ¶¶ 3-4, Ex. A.

As for the final two (2) elements, which are not addressed by Defendants in their Motion and thus, apparently conceded, given that Defendants' Websites accept orders from, and process the information and payment of, New York consumers, Defendants should reasonably have expected their acts to have consequences in New York. *See* Drangel Dec., ¶ 13, Ex. A. Further, as evidenced by records provided by PayPal, it is irrefutable that Defendants derive substantial revenue from interstate or international commerce. Brownlee Dec., ¶ 13; *see also Starmedia*

*Network, Inc.*, 2001 U.S. Dist. LEXIS 4870 (finding these two factors satisfied when the defendant used its website to attract business across the nation, including in New York, and derived substantial revenue from interstate sales).

### iii. *Personal Jurisdiction Comports With Due Process*

Since New York's long arm statute provides for personal jurisdiction in a more limited range of circumstances than the Due Process Clause, "a foreign defendant meeting the standards of § 302 will satisfy the due process standard."[10] *Energy Brands Inc.,* 571 F. Supp. 2d at 469. Moreover, with respect to cases involving Internet activity, a given defendant's operation of a fully interactive website has been found to support the reasonableness of the Court's exercise of jurisdiction. *See, e.g., Starmedia Network, Inc.*, 2001 U.S. Dist. LEXIS 4870. Defendants state, in a conclusory fashion, that "[t]he burden on Defendants is significant, as they have no contact with New York or the United States but instead are citizen[s] and resident[s] of China" (Motion, p. 10); however, an unsupported allegation of "general inconvenience of litigating in New York" is insufficient to preclude this Court's exercise of jurisdiction over Defendants. *Id.* at \*12.

### C. SERVICE BY ALTERNATIVE MEANS IS APPROPRIATE AND WAS AUTHORIZED BY THIS COURT

#### i. *Defendants Received Actual Notice*

Plaintiff's Application specifically sought an order authorizing alternative service of process by electronic means, which this Court granted in its entrance of the TRO. On March 26, 2021, pursuant to the TRO, Defendants were served with copies of the Summons and Complaint, the TRO, and all papers filed in support of Plaintiff's Application, as reflected in Plaintiff's Certificate of Service. *Docket Entry No. 20*. As such, Defendants received copies of the Summons

---

[10] It should be noted that Defendants devote several pages (Motion, pp. 7-10) to analyzing whether or not the exercise of personal jurisdiction satisfies due process, rather than focusing on satisfactorily addressing the individual elements of the applicable provisions of New York's long arm statute. Defendants also cite to a variety of cases from outside this Circuit, which are not binding on this Court (Motion, p. 9).

and Complaint via electronic mail. *See* Brownlee Dec., ¶ 18, Ex. B. To ensure Defendants' receipt of the Summons, Complaint and TRO, Plaintiff used RPost's registered mail services to serve the Defendants by email and received registered receipts from RPost confirming that the emails were sent and delivered to Defendants. *Id.* Therefore, Defendants' representatives' attestations that they were not served with process, nor did they receive any documents from Plaintiff or its counsel (*Docket Entry Nos. 23-2, 23-3, and 23-4*) are dubious at best, given that Defendants' counsel contacted Plaintiff's counsel on April 2, 2021, and appeared at the Show Cause Hearing.

> ii. *The Hague Convention Is Inapplicable Because Defendants' Addresses Were Unknown*

Pursuant to Fed. R. Civ. P (4)(f)(1), service may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention"). Although China is a signatory to the Hague Convention, it "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1. Despite what Defendants baselessly contend, this is a case where Defendants' addresses were not known. Plaintiff specifically requested service by alternative means because off-shore counterfeiters, like Defendants, have been known to use aliases, false addresses and other incomplete identifying information to shield their true identities and Plaintiff's due diligence revealed that there were, in fact, only email addresses associated with Defendants' Websites. No physical addresses were listed on Defendants' Websites, and the Who Is information for Defendants' Websites did not list any physical addresses. Drangel Dec., ¶¶ 12, 15. Plaintiff's counsel placed test buys in order to ascertain additional contact information; however, Defendants' order confirmations were likewise devoid of any contact information, other than Defendants' email addresses. Drangel Dec., ¶ 13, Ex. A; *see also* Brownlee Dec., ¶ 19, Ex. A. Defendants suggest

13

that Defendants' addresses were known because "Defendants uploaded its true and correct address when it registered its account with PayPal" and "Plaintiff can obtain Defendants' physical addresses from PayPal" (Motion, p. 12). However, in Plaintiff's counsel's experience, and per the PayPal Privacy Statement, PayPal will not disclose the contact information of its users, absent a subpoena or court order. Brownlee Dec., ¶ 8. Therefore, Defendants' attestation that Defendants had "readily discoverable physical address[es] with PayPal" (Motion, p. 13) is wholly without merit.

In light of the exigency of Plaintiff's Application, Plaintiff specifically requested that the Court order Third-Party Service Providers and Financial Institutions to provide contact information for Defendants as part of the TRO. Moreover, the records that Plaintiff obtained via PayPal, only after the entry of the TRO, evidence various addresses in Chinese. Brownlee Dec., ¶ 13. After Plaintiff was supplied with such information from PayPal, its counsel conferred with its office in Beijing to locate further information regarding Defendants and their potentially true and correct addresses. *Id.* at ¶ 14. It should be noted that the addresses on file with PayPal conflict with the records supplied by GoDaddy, which indicate that the registrant for Defendants' Websites is in Hong Kong (although a complete address was not on file with and/or produced by GoDaddy). *Id.* at ¶¶ 12-13. Accordingly, even after the third-party discovery that Plaintiff was only able to obtain via the TRO, the true and correct addresses of Defendants were not entirely verifiable.

Regardless, Plaintiff may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009); *see also Zhang v. Baidu.Com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013) (noting that numerous courts

have ordered alternative service under 4(f)(3) even if the Hague Convention is found to be applicable). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015).

Despite China's objection to service by postal channels under Article 10 of the Hague Convention, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *See Sulzer Mixpac AG*, 312 F.R.D. at 332. Further, as argued in Plaintiff's Application, and as aptly determined by the Court in granting the TRO, service on Defendants by various electronic means comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950). Based on the foregoing, service by email, with confirmation of delivery by RPost, was appropriate and sufficiently apprised Defendants of this Action. Accordingly, the Defendants' Motion as it pertains to allegedly insufficient service of process should likewise be denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety, and enter a preliminary injunction against Defendants.

Dated: April 21, 2021                                                      Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:   /S Kerry B. Brownlee
       Kerry B. Brownlee (KB 0823)
       kbrownlee@ipcounselors.com
       Jason M. Drangel (JD 7204)
       jdrangel@ipcounselors.com

15

Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*American Girl, LLC*