USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN GIRL, LLC,

    Plaintiff,

-against-

ZEMBRKA d/b/a WWW.ZEMBRKA.COM and WWW.DAIBH-IDH.COM;
WWW.ZEMBRKA.COM; and WWW.DAIBH-IDH.COM,

    Defendants.

1:21-cv-02372 (MKV)

**OPINION AND ORDER
DISMISSING CASE FOR LACK OF
PERSONAL JURISDICTION**

MARY KAY VYSKOCIL, United States District Judge:

    Growing up, many young American girls receive American Girl brand dolls, watch American Girl brand movies, and read American Girl brand books. These products seek to help young girls learn life lessons and understand people of different races, religions, and cultures. The products are incredibly popular with children and parents, leading to numerous awards from industry and parenting groups and millions of products sold to date. Simply, the American Girl brand is a quintessential American retail brand.

    As is customary with many such iconic brands, however, the success of American Girl dolls and other products has led to a market for cheaper, low-quality counterfeits. In an effort to protect the quality of its products and intellectual property, Plaintiff, the creator of American Girl-branded products, sought and received trademark protection for a number of phrases and names affiliated with the toys. Plaintiff alleges that despite this legal protection, counterfeit products still are manufactured, advertised, and sold, including by Defendants here, who operate websites that appear to the Court to blatantly infringe on Plaintiff's legally protected rights. Plaintiff filed this action to attempt to stop such infringement. Plaintiff secured a restraining

order to temporarily bar Defendants from continued sale of infringing products, and now seeks a preliminary injunction to enjoin Defendants through the pendency of this litigation.

In response, Defendants, who are all based in China, have moved to dismiss this case for lack of personal jurisdiction and for ineffective service of process. They oppose Plaintiff's motion for a preliminary injunction on the same grounds. Unfortunately for Plaintiff, while the merits of its underlying infringement claims appear facially valid, Defendants are correct that they are not subject to personal jurisdiction in this Court. As a result, and for the reasons that follow, Defendants' motion to dismiss Plaintiff's complaint is GRANTED, Plaintiff's motion for a preliminary injunction is DENIED, and the previously entered temporary restraining order in this case is dissolved.

## FACTUAL BACKGROUND

The facts as stated herein are taken from Plaintiff's Complaint, ECF No. 6 ("Cpl.") and are accepted as true for the purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff American Girl, LLC is the creator, manufacturer, and seller of products under the brand name "American Girl." *See* Cpl. ¶ 22. American Girl products "are a coveted line of dolls, books and doll accessories that are intended to teach girls important lessons about America's history and foster pride in the traditions of growing up as a female in America." Cpl. ¶ 11. American Girl products have received more than 450 different awards from industry groups, parenting organizations, and others in recognition of their messages and quality. Cpl. ¶ 15-16. Since 1986, consumers have purchased more than one hundred fifty-nine million American Girl books and more than thirty-three million American Girl dolls. Cpl. ¶ 14.

In order to protect their products and ensure the quality of products marketed under the "American Girl" brand, Plaintiff has sought and received numerous trademark registrations for

"American Girl" and other phrases and names, for a variety of services and products. Cpl. ¶ 17-18. For example, Plaintiff holds trademark registration number 2,200,654 for the use of "American Girl" on toys, games, and sporting goods. Cpl. ¶ 18, Ex. B. Plaintiff alleges that a significant portion of its success has resulted from the superior quality of its products and the ability to restrict use of the "American Girl" name to similarly high-quality goods. Cpl. ¶¶ 21-25.

At some point, Plaintiff became aware of allegedly counterfeit and infringing products being sold online using the "American Girl" name and trademarks. Cpl. ¶ 27. After an investigation, Plaintiff determined that Defendants, several websites operated by individuals in China, were responsible for at least some of these sales. Cpl. ¶¶ 27-29.

Defendants' websites appear to offer for sale products that are nearly indistinguishable from Plaintiff's own goods, including by using the trademarked names for each variety of doll and by using the "American Girl" name. Cpl. ¶¶ 29-30. Plaintiff also alleges that Defendants copied images from Plaintiff's website and "have deliberately intended to mimic or resemble Plaintiff's Website through their use of the same color scheme, as well as the prominent use of one of the stylized American Girl Marks in the header, in an obvious intent to deliberately mislead consumers." Cpl. ¶ 31. Plaintiff confirms that it never authorized or licensed to Defendants any ability to sell American Girl products. Cpl. ¶ 34.

Before the filing of this lawsuit, Plaintiff and its counsel investigated the counterfeit and infringing products for sale on Defendants' website. As part of that investigation, Plaintiff's counsel purchased two products from each of the websites operated by Defendants. Cpl. ¶ 32, Ex. D. In the ordering process, counsel input a New York address for shipping purposes. Cpl. ¶ 32. Plaintiff paid for the products, but they were never delivered. *See* Plaintiff's Memorandum

of Law in Opposition to Motion to Dismiss, ECF No. 28 ("Pl Br.") at 5. Plaintiff was later refunded for the products they had purchased. *See* Pl. Br. at 5 n.4.

Plaintiff filed its complaint in March 2021. The action was initially filed under seal to permit Plaintiff to seek a temporary restraining order without notice to Defendants. *See* Sealing Order, ECF No. 1. Plaintiff sought an *ex parte* temporary restraining order which would, among other things, freeze Defendants' websites and financial accounts and enjoin Defendants from manufacturing, advertising, and selling allegedly infringing products. *See* Proposed Temporary Restraining Order, ECF No. 13, at 5-7. Plaintiff claimed *ex parte* relief was appropriate because it feared that Defendants would secret away assets or take their websites offline if notice of the proceeding and application first was given. *Id.* at 4. The proposed order also sought authorization for alternative service on Defendants by email and expedited discovery from Defendants, the companies that hosted Defendants' websites and their financial institutions. *Id.* at 9-14.

On March 18, 2021, the Court signed the proposed order with some modifications. *See* Temporary Restraining Order and Order to Show Cause, ECF No. 17 ("TRO"). In signing the Order, the Court noted that Defendants appeared to be marketing and selling products, using counterfeit versions of Plaintiff's trademarks, and that the websites and products listed there were substantially similar or seemingly identical to Plaintiff's legal versions. TRO at 1-4. The Court's order also authorized alternative service by email and for the immediate freezing of Defendants' websites and accounts. *See* TRO at 9-10.

By its terms, the order expired fourteen days after it was signed, and by which point all Defendants should have been served by the email service regime authorized in the TRO. Before it expired, Plaintiff filed a letter seeking to extend the TRO through the date the Court had set for a hearing on Plaintiff's motion for a preliminary injunction, April 14, 2021. *See* Letter to Court,

4

ECF No. 18.  Plaintiff confirmed that as of the date of letter—March 30, 2021—all Defendants had been served by email.  *Id.*  Despite being served and having their accounts frozen, no Defendants responded to the TRO by that point, nor did any Defendant seek, at that time, to dissolve the TRO.  In light of that, the Court extended the TRO through the previously scheduled hearing.  *See* Order Extending TRO, ECF No. 25.

On the morning of the hearing, and after the date for the submission of opposition papers, Defendants appeared and filed a joint opposition to the preliminary injunction motion and their own motion to dismiss the complaint.  *See* Opposition to Preliminary Injunction and Motion to Dismiss Complaint, ECF No. 23.  In support of the motion, Defendants filed a memorandum of law [ECF No. 23-1] ("Def. Br."), and affidavits by multiple individuals that own and operate the Defendants and the websites [ECF Nos. 23-2, 23-3, 23-4].

Counsel for Defendants also appeared at the hearing to oppose the entry of a preliminary injunction.  Defendants admitted their delay in filing papers, despite also acknowledging that they had received copies of the TRO and other papers before the deadline to respond.  *See* Transcript of April 14, 2021 Hearing, ECF No. 26 ("Tr."), at 20:13-19.  Defendants consented to an extension of the TRO while their motion to dismiss the complaint was briefed.  Tr. At 20:20-21:12, 22:20-23:4.

Thereafter, Plaintiff filed an opposition to Defendants' motion to dismiss [ECF No. 28] ("Pl. Br.") along with an additional declaration of counsel and of its corporate secretary [ECF Nos. 29-30].  Defendants then filed a reply [ECF No. 31] ("Reply").

## **LEGAL STANDARD**

In opposing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir.

2010) (citing *In re Magnetic Audiotape Antitrust Litg.*, 334 F.3d 204, 206 (2d Cir. 2003)). Specifically, the plaintiff must make a *prima facie* showing that jurisdiction exists by including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. *Id.* at 34-35 (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006), and then quoting *In re Magnetic Audiotape*, 334 F.3d at 206).

When evaluating the motion, the Court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018)). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quoting *In re Facebook Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)). In reviewing a motion to dismiss, the Court is limited the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016). However, when considering arguments related to personal jurisdiction, "the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Knight v. Standard Chartered Bank*, No. 19-cv-11739 (PAE), __ F. Supp. 3d __, 2021 WL 1226870, at *1 n.1 (S.D.N.Y. Mar. 31, 2021) (citing *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015)).

## ANALYSIS

Plaintiff asserts that Defendants properly are subject to jurisdiction in New York. Plaintiff admits that the Court cannot assert "general" jurisdiction over Defendants, *see See* Pl. Br. at 7, because Defendants operate from China, are not incorporated in any state in the United

6

States, and, thus, are not "essentially at home" in New York. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Instead, Plaintiff asserts that Defendants are subject to specific personal jurisdiction here. Specific jurisdiction requires that a defendant "purposefully avail" itself of "the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1025 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Evaluating personal jurisdiction generally entails a two-stage analysis. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). First, the Court must analyze whether the law of the state—here, New York's long-arm statute, N.Y. C.P.L.R. § 302—subjects the individual to jurisdiction. *Id.* Second, if New York law would permit the exercise of jurisdiction, the Court then must evaluate whether the exercise of jurisdiction would comport with constitutional due process protections. *Id.*; *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) ("In determining whether [specific personal] jurisdiction exists, a court 'must look first to the long-arm statute of the forum state . . . If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process.'" (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001))).

### A. *The New York Long-Arm Statute Does Not Permit the Exercise of Jurisdiction Here*

Plaintiff has offered two provisions of the New York long arm statute that it says subjects Defendants to jurisdiction here. First, Plaintiff claims that Defendants have transacted business in New York, which subjects them to personal jurisdiction for claims related to that business. *See* N.Y. C.P.L.R. § 302(a)(1). Second, Plaintiff claims that Defendants' infringement activity is a "tortious act" and Defendants should "reasonably expect the act to have consequences in the state." N.Y. C.P.L.R. § 302(a)(3)(ii). Neither of Plaintiff's arguments is availing.

1. *Transaction of Business*

Plaintiff has not pleaded a *prima facie* case or shown evidence that the Defendants transact business in New York. The New York long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state."[1] N.Y. C.P.L.R. § 302(a)(1).

The Second Circuit has previously indicated that certain forms of internet commerce, even where the defendant is not physically located in New York, are sufficient to find that a defendant "transacted business" here. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ("[T]he single act of an out-of-state defendant employee shipping an item into New York, combined with his employer's extensive business activity involving New York, gives rise to personal jurisdiction over the employee."). In *Chloé*, the Second Circuit held that an individual who shipped an allegedly counterfeit bag into New York was subject to personal jurisdiction in New York under the "transacting business" prong of the long-arm statute because of 1) his sale and shipment of one bag and 2) the extensive contacts his employer had with New York. *Id*. at 169-171.[2] Relevant to the analysis, the Circuit held that the employer's contacts

---

[1] Plaintiff does not argue that by offering products for sale on their website, Defendants have made an "offer" to contract with Plaintiff. Under this theory, when Plaintiff submitted its order for goods to be shipped into New York, arguably a contract was created, and jurisdiction may be appropriate. *Cf. Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d Cir. 2016) (noting, under Washington law, that a contract was formed when a plaintiff submitted an order on Amazon.com). The Court does not decide this issue here because it has not been argued or briefed by the Parties. I note, however, that if Plaintiff's order did finalize the formation of a contract, Defendants' defense, discussed below, that they have a policy of not shipping to New York and the United States may not be sufficient to abrogate the contract, since there is no evidence that the purported policy was communicated to Plaintiff before the order was submitted. *See, e.g.*, *Hines v. Overstock.com*, 380 F. App'x 22, 24 (2d Cir. 2010) (collecting cases under New York law holding that uncommunicated conditions of a contract are unenforceable) (summary order).

[2] While a court generally may not impute all of a company's contacts on to an employee, the facts elicited in *Chloé* demonstrated that the individual defendant was more than a normal employee. Instead, he "shared in the profits from the bags Queen Bee [the corporate defendant] sold, had joint access to the Queen Bee bank account, used Queen Bee revenue to pay his Beverly Hills rent, and shared in the decision-making and execution of the purchase and sale of handbags." *Chloé*, 616 F.3d at 169. As a result, the Second Circuit held that the contacts could be

8

included the operation of a "highly interactive website offering [] bags for sale to New York consumers" and fifty-two previous transactions where goods actually were shipped into New York. *Id.* at 170-71. Those contacts (which were imputed to the individual Defendant) along with the individual Defendant's actually shipping one allegedly infringing bag into New York himself were sufficient to show that he "transacted business" in New York. *Id.* at 171. Since *Chloé*, courts in this District have split on what specific actions, if any, a defendant must take in addition to operating a website accessible from New York to constitute "transacting business in New York" for jurisdictional purposes. *Compare e.g.*, *Poof-Slinky, LLC v. A.S. Plastic Toys Co., Ltd.*, No. 19-cv-9399 (ER), 2020 WL 5350537, at *4 (S.D.N.Y. Sept. 4, 2020) (noting that defendants who did not ship any products to New York are nonetheless subject to jurisdiction because "the offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer" (quotation marks omitted)), *with Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-cv-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) ("[T]he existence of an interactive patently commercial website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York.").

     I conclude, based on the record before the Court, that Defendants here have not "transacted business" in New York. Plaintiff cannot point to a single sale that Defendants made into New York or any action that Defendants took to target their sales activity into this state. The only instance to which Plaintiff can point is an attempted purchase, by Plaintiff's counsel, of products from Defendants' websites on the same day Plaintiff filed its complaint. Cpl. Ex. D.

---

imputed to him under longstanding New York law. *Id.* at 167-68 (citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44, 71 N.Y.2d 460, 467 (1988)).

However, as Plaintiff admits, no product ever reached New York and Plaintiff was, in fact, refunded the purchase price.³ *See* Pl Br. at 5.  This may be because, as Defense counsel explained at the April 14 hearing, Defendants claim to have a policy of not shipping products to the United States and to refund any money paid by a potential American purchaser.⁴  Tr. at 17:18-18:1.  While Defendants' evidentiary record in support of their motion to dismiss is conspicuously silent on this supposed policy, *see, e.g.*, Affidavit of Wanglin Yu, ECF No. 23-2, ¶ 17 (noting that the affiant has "never shipped/sold any allegedly infringing product to anyone including anyone in New York," but not discussing a policy not to ship goods into the United States),⁵ Plaintiff—who bears the burden to allege jurisdiction—does not allege any sales into New York or any action by Defendants to target their sales activity to New York.

Instead, Plaintiff rests its argument for C.P.L.R. § 302(a)(1) jurisdiction on cases that state that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a)."  Pl. Br. at 5 (quoting *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009)).  These cases are, of course, not binding, and, on careful analysis, do not support Plaintiff's argument on the record before the Court.  The *Cartier* case cited by Plaintiff is cited throughout the Plaintiff's other precedents as support for this assertion.  *See, e.g.*, *Poof-Slinky*, 2020 WL

---

³ Plaintiff admits that it received a refund for the products purchased by counsel on April 10, 2021, and provided documentation to that effect.  *See* Pl. Br. at 5; *see also* Declaration of Kerry B. Brownlee in Opposition to Motion to Dismiss, ECF No. 30, at ¶ 22, Ex. C.

⁴ While the refund was received on April 10, 2021, Plaintiff did not mention the refund during the hearing on April 14.  While the Court did not specifically inquire about a refund with Plaintiff's counsel, the Court did ask whether the products Plaintiff purchased were ever received in New York.  Tr. at 9:4-25.  Plaintiff's counsel answered simply that the products were never received.  *Id.*  The Court assumes that Plaintiff's omission of the fact that a refund for the order was received three days earlier was an oversight and not an attempt to mislead the Court.

⁵ Identical paragraphs, with the same conspicuous absence of any mention of a policy not to sell goods into the United States, appear in each of the affidavits Defendants' submitted from operators of the Defendant websites.  *See* Affidavit of Yanmei Yu, ECF No. 23-3, ¶ 17 ("I have never shipped/sold any allegedly infringing product to anyone including anyone in New York."); Affidavit of Yi Fang, ECF No. 23-4, ¶ 17 ("I have never shipped/sold any allegedly infringing product to anyone including anyone in New York.").

5350537, at *4 (citing *Cartier*); *Mattel v. AnimeFun Store*, No. 18-cv-824 (LAP), 2020 WL 2097624, at *4 n.7 (S.D.N.Y. May 1, 2020) (same). However, the Court is not persuaded by Plaintiff's reliance on *Cartier*, primarily because, in that case, the Defendants actually did sell allegedly infringing products (there, watches) into New York and admitted to the sale and shipment of a watch to an agent of the plaintiff. *See Cartier*, 598 F. Supp. 2d at 425; *see also*, Dkt. No. 35 at ¶ 22, Declaration of Rachel Levy in Support of Motion to Dismiss, *Cartier v. Seah LLC*, No. 08-cv-4471 (LAK) (acknowledging that a product was sold and shipped to a New York address belonging to plaintiff's agent). In addition, at least one of the other cases on which Plaintiff relies also had consummated sales and shipments of products into New York from at least some of the Defendants. *See Poof-Slinky, LLC*, 2020 WL 5350537, at *4 ("Plaintiff contends, and the Orel Defendants admit, that NAL engaged in at least one transaction with each Orel Defendant to purchase allegedly counterfeit products for shipment to New York" and citing Defendant's memorandum of law acknowledging purchases and shipments). Here, unlike in *Cartier*, there is no record evidence to suggest that any product actually has been shipped to or received in New York.

The Court is unconvinced that a Defendant simply owning a website that is "accessible" from New York is enough to find that it transacts business here, as Plaintiff argues.[6] Unless a website owner takes affirmative steps to limit access to his website, a web page generally is

---

[6] Plaintiff cites a previous opinion issued by this Court as authority for the proposition that operating a website, absent more, is sufficient to "transact business." *See* Pl. Br. at 6 (citing *Smart Study Co. v. A Pleasant Trip Store*, No. 20-cv-1733 (MKV), 2020 WL 2227016 (S.D.N.Y. May 7, 2020). To the extent any of the conclusions herein differ with the conclusions in that case, the Court notes that it is not bound by its own prior opinion in a different case. *See Camreta v. Greene*, 563 U.S. 692, 710 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134–26 (3d ed.2011)). In any event, unlike this case, there was no clear admission in *Smart Study Co.* that no products ever reached or were shipped to New York.

available to anyone in the world with an internet connection.[7] *See generally* Peter K. Yu, *A Hater's Guide to Geoblocking*, 25 B.U. J. OF SCI. & TECH. L. 503, 504-506 (explaining that "geoblocking" allows a content owner to restrict access to a website or other content based on the user's location). In order to be subject to jurisdiction, however, a defendant must engage in business "purposefully directed toward the forum State." *Ford Motor Co.* 141 S. Ct. at 1025 (Plaintiff "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State." (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))); *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987) ("The substantial connection between the defendant and forum State necessary for a finding of minimum contacts must come about by *an action of the Defendant purposefully directed toward the forum State*." (citing *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 475-76 (1985)) (emphasis in original)); *see also Chloé*, 616 F.3d at 171 (quoting *Asahi Metal*, 40 U.S. at 112). Defendants' choice not to take the extra step to limit access to their websites by New Yorkers cannot be said to be conduct "purposefully directed" at New York. This is especially true where Defense counsel has represented that Defendants' company policy is to not ship orders to the United States and to refund payments received. *See* Tr. at 17:18-18:1. While Defendants might ideally state on their websites that products are not shipped to New York or to the United States, failure to do so is not dispositive since it is Plaintiff's burden to show that Defendant's "purposefully" took some action directed at New York. *Penguin Grp.*, 609 F.3d at 34-35 ("A plaintiff bears the burden of demonstrating personal jurisdiction" by showing "facts that, if credited, would suffice to

---

[7] To most people, the most common example of this technology is the use of "geoblocking" to restrict access to internet streaming websites like Netflix, HBO, and Amazon, based on the users location. Examples of this type of restriction, as well as user's attempts to avoid them, abound. *See, e.g.*, Quentin Hardy, *National Borders Dissolve, For Work and for Movies*, N.Y. TIMES, Feb. 9, 2015, at B6 (discussing methods to use virtual private networks ("VPNs") to avoid geoblocking technology on internet video streaming websites and noting that approximately 20 million people worldwide use such services).

establish jurisdiction over the defendant." (quoting *In re Magnetic Audiotape*, 334 F.3d at 206) (alteration omitted)).

While there is some contrary authority within the District, several other judges in the District have reached the same conclusion as the Court does here, and have held that simply operating a website, absent more, is insufficient to establish that Defendants "transact business" in New York within the meaning of C.P.L.R. § 302(a)(1) sufficient to subject a defendant to jurisdiction in New York. *See, e.g.*, *Alibaba Grp. Holding*, 2018 WL 2022626, at *4 ("Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York." (quoting *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006))); *Starmedia Network, Inc. v. Star Media, Inc.*, No. 00-cv-4647, 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit." (quoting *Nat'l Football League v. Miller*, No. 99-cv-11846 (JSM), 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000))).

In one recent example, the court held that the defendant company did not transact business in New York by means of its website for the purpose of personal jurisdiction despite being accessible from this state because no purchases or sales had occurred in New York and Defendants' store policy was only to fulfill orders within a 300 mile radius of one of their stores (none of which were within 300 miles of New York). *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19-cv-11197 (KPF), 2020 WL 7480619, at *8 (S.D.N.Y. Dec. 18, 2020). In reaching that decision, Judge Failla pointed to several cases holding that "even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial

activity occurred in New York." *Id.* (quoting *Alibaba Grp. Holding*, 2018 WL 2022626, at *4). In short, absent some action by Defendant to specifically target New York with its sales and website, or consummated transactions in the state of New York, Plaintiff cannot establish that Defendants "transact business" in New York for the purposes of personal jurisdiction. *Id.* at *9 ("To the extent Plaintiff would argue that Defendant's 'national web presence' targets New York, such national presence, standing alone, is insufficient to support the exercise of personal jurisdiction"); *see also Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219-20 (2d Cir. 2004) (affirming dismissal for lack of personal jurisdiction where defendants "manifested no intent specifically to target New York supporters or to avail themselves of the particular benefits of New York law.") (summary order). As a result, Section 302(a)(1) of the long-arm statute does not justify the exercise of personal jurisdiction over Defendants on the facts before the Court.

### B. Tortious Conduct

Plaintiff alternatively bases jurisdiction in this case on Defendants' alleged tortious conduct. The New York long-arm statute provides that

> a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent commits a tortious act without the state causing injury to person or property within the state, . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce

N.Y. C.P.L.R. § 302(a)(3)(ii). In other words, Plaintiff may establish specific personal jurisdiction over Defendants if (1) the defendant committed a "tortious act" outside New York; (2) the cause of action in this action arose from that tortious act; (3) the tortious act caused injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the tortious act to have consequences in New York; and (5) the defendant derives substantial revenue from interstate or international commerce." *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006).

Plaintiff is correct that it has established the existence of a tortious act and a connection between the tortious act and the claims in this case. Specifically, plaintiff alleges that Defendants are committing trademark infringement and have brought claims for relief based on that infringement. *See Touro Coll. V. Fondazione Touro Univ. Rome Onlus*, 2017 WL 4082481, at *11 (S.D.N.Y. Aug. 31, 2017) (for the purposes of N.Y. C.P.L.R. § 302(a)(3), "trademark infringement constitutes a tort." (citing *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106 (S.D.N.Y. 2015))).

Plaintiff has not established, however, that Defendants' infringement caused injury in New York for the purposes of personal jurisdiction. The New York Court of Appeals previously has held that the situs of an injury based on copyright infringement occurring over the internet is "the location of the copyright holder." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162, 16 N.Y.3d 295, 302 (2011). While that opinion limited the ruling to the kinds of facts before the Court (involving publication of copyrighted material over the internet and not in any one place), since the *Penguin Group* case has decided, courts have applied the ruling's logic to trademark cases. *See, e.g.*, *Alibaba Grp. Holding*, 2018 WL 2022626, at *7-8. Under this controlling law, Defendants' alleged infringement would cause injury to Plaintiff in California. *See* Cpl. ¶ 5 ("Plaintiff American Girl, LLC is a limited liability [company] . . . with its principal place of business located at 333 Continental Boulevard, TWR 15-1, El Segundo, CA 90245").

Even if this language from *Penguin Group* is not dispositive of the issue, Plaintiff nonetheless fails to establish injury in New York under traditional tort principles applicable to the New York long-arm statute. Generally, the situs of a commercial tort injury is "the place plaintiff lost business." *Penguin Grp.*, 16 N.Y.3d at 305 (quoting *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir. 1971)). To establish loss of business, the plaintiff needs to identify customers who were confused or potentially confused by

15

the infringement. *See, e.g.*, *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 471 (S.D.N.Y. 2008) (finding an injury in New York where "[d]efendants' goods were purportedly passed off and sold to New Yorkers who were actually or potentially confused as to their origin."). However, Plaintiff also cannot establish an injury in New York using this analysis because it has failed to allege or offer any evidence of any New York customers who were confused by the alleged counterfeits or who purchased them. *See Alibaba Grp. Holding*, 2018 WL 2022626, at *8 ('Without allegations of specific, non-speculative harm in the form of actual or potential injury in a New York market for its services, [Plaintiff] cannot establish a New York-based injury under an economic tort theory."). As described above in connection with Defendants' alleged business contacts, Plaintiff alleges only a single sale to New York for each Defendant, neither of which ultimately were consummated. While Plaintiff does allude to an unknown number of customers (whose locations also were unknown and were, thus, not necessarily in New York) who complained about Defendants' products, *see* Pl. Br. at 9 n.8, this vague reference does not satisfy Plaintiff's burden to allege personal jurisdiction and to establish a specific "New York market" influenced by Defendants' infringement. *Cf. Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) ("Harm to a business in the New York market through lost sales or lost customers' may meet the requirement of injury in the forum state, but 'those lost sales must be in the New York market, and those lost customers must be New York customers." (internal quotation marks and citations omitted). Because Plaintiff fails to establish a New York injury, the Court need not analyze the final two elements of the tortious injury provision of the long-arm statute.[8]

---

[8] While Plaintiff has not alleged an injury in New York, Defendants suggest that Plaintiff's injury occurred either in California or Delaware. *See* Def. Br. at 6. Without deciding the issue, the Court notes that Plaintiff may be able to refile this case in one of those states and assert jurisdiction on the ground that its injury occurred there. For this reason, the Court also does not consider Plaintiff's request that the Court find personal jurisdiction appropriate here under Federal Rule of Civil Procedure 4(k)(2). *See* Pl. Br. at 9 n.7. That rule provides that a court may find

As described above, Plaintiff has not established either that Defendants transact business in New York or that jurisdiction over them is appropriate based on a New York injury resulting from their tortious conduct. In sum, state law does not permit the exercise of jurisdiction over Defendants here. In light of that, the Court does not reach the second step of the personal jurisdiction analysis or consider whether exercising jurisdiction would be consistent with constitutional due process. Instead, because the exercise of jurisdiction is not permitted by state law, the case must be dismissed.

C.    *Jurisdictional Discovery*

In a footnote, Plaintiff includes a request for jurisdictional discovery. *See* Pl. Br. at 10 n.9. Jurisdictional discovery is appropriate where the plaintiff "has made a threshold showing that there is . . . a colorable claim of jurisdiction." *WM Int'l, Inc. v. 99 Ranch Mkt. #601*, 329 F.R.D. 491, 495 (E.D.N.Y. 2019) (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014)). Here however, Plaintiff has not even made a threshold showing of personal jurisdiction. Plaintiff has not alleged a single consummated sale of any of Defendants' products into New York. Nor has Plaintiff pointed to any other contact Defendants have made with New York specifically. In short, Plaintiff's jurisdictional discovery would not supplement a colorable claim, but instead would seek to create a claim that jurisdiction is appropriate here. Because of that, jurisdictional discovery is not appropriate here.

---

personal jurisdiction if the claims in the case arise under federal law, if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and if exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). While that provision could permit a Court to exercise jurisdiction over Defendants in this case, where jurisdiction might not otherwise be apparent, Plaintiff has not established the necessary prerequisites here. Specifically, Plaintiff has failed to establish that Defendants will not be subject to personal jurisdiction in the courts of another state (*i.e.* California or Delaware, as suggested by Defendants). Absent that, the Court cannot consider Rule 4(k)(2) for jurisdiction here because "Rule 4(k)(2) is simply a last-resort provision for establishing jurisdiction over alien defendants who would otherwise not be subject to the jurisdiction of any Court." *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 31 (D.D.C. 2000). If this case is refiled in another District, Plaintiff may be able to present this argument anew in that forum.

17

## CONCLUSION

As stated herein, Defendant's motion to dismiss Plaintiff's complaint is GRANTED. The Court is aware that this result means that Plaintiff's claims could go unresolved on their merits if Plaintiff chooses not to refile the case in a more appropriate forum. This is an especially acute concern for the Court because the facial evidence of infringement in this case is so persuasive and Defendants have chosen allegedly to counterfeit products related to a quintessential American brand. However, despite what outcome the Court may prefer in a vacuum, courts are bound by the law and cannot subject Defendants to litigation far from their home and without any allegation or showing that jurisdiction is proper here. While Plaintiff may be able to find an appropriate forum in which to seek redress for Defendants' alleged infringements on its brand, this Court is not it.

In light of the dismissal of this case, Plaintiff's motion for a preliminary injunction is DENIED and the temporary restraining order previously entered in this case is dissolved.

The Clerk of Court respectfully is requested to close the Motion at ECF No. 23, to terminate any other open motions on the electronic docket, and to close the case.

**SO ORDERED**

Date: **April 28, 2021**
  **New York, New York**

*Mary Kay Vyskocil*
MARY KAY VYSKOCIL
United States District Judge