Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*American Girl, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN GIRL, LLC<br><br>*Plaintiff*<br><br>v.<br><br>ZEMBRKA d/b/a WWW.ZEMBRKA.COM and WWW.DAIBH-IDH.COM; WWW.ZEMBRKA.COM; and WWW.DAIBH-IDH.COM<br><br>*Defendants* | **CIVIL ACTION NO.**<br>**21-cv-2372 (MKV)** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   ABBREVIATED PROCEDURAL HISTORY & RELEVANT FACTS ............................ 2

   A.   BRIEF PROCEDURAL HISTORY ................................................................... 2

   B.   BRIEF RELEVANT FACTS ............................................................................ 2

III.  ARGUMENT ....................................................................................................... 4

   A.   LEGAL STANDARD ...................................................................................... 4

   B.   PLAINTIFF'S MOTION IS TIMELY & JUSTIFIED BY NEW EVIDENCE ................. 5

   C.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .................. 5

      1.   New Discovery Produced by PayPal Establishes Cognizable Injury in New York
      Under N.Y. C.P.L.R. § 302(a)(3)(ii) ............................................................ 5

      2.   New Discovery Produced by PayPal Further Establishes That Defendants Have
      Transacted Business in New York Under N.Y. C.P.L.R. § 302(a)(1) .................. 8

IV.   CONCLUSION .................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2019 U.S. Dist. LEXIS 194268, 2019 WL 5696148 (E.D.N.Y. Sept. 30, 2019) .......................................................... 10

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 U.S. Dist. LEXIS 72282 (S.D.N.Y. Apr. 30, 2018) ............................................................................ 7, 13

*Am. Network v. Access Am. / Connect Atlanta*, 975 F. Supp. 494 (S.D.N.Y. 1997) ................... 6

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .................................................... 8

*Capitol Records, Inc. v. MP3tunes,LLC*, No. 07 Civ. 9931 (WHP), 2008 U.S. Dist. LEXIS 75329, 2008 WL 4450259 (S.D.N.Y. Sept. 29, 2008)................................................................. 12

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ...................................................... 11

*Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422 (S.D.N.Y. 2020) ................................... 6, 10

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)..................................... 9

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)................................... 12

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329 (S.D.N.Y. 2008) 7

*DelleFave v. Access Temporaries, Inc.*, No. 99 CIV. 6098(RWS), 2001 U.S. Dist. LEXIS 3165, 2001 WL 286771 (S.D.N.Y. Mar. 22, 2001) ............................................................................. 4

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008).......... 6, 7, 11

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ................................................................................................. 9

*Garraway v. Newcomb*, 154 F. App'x 258 (2d Cir. 2005) .......................................................... 5

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) .................... 9

*In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613 (S.D.N.Y. 2000) ................................ 4

*ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006)..................................... 9

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99 (2d Cir. 2013) .. 4

*LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*, 2006 U.S. Dist. LEXIS 2600 (S.D.N.Y. Jan. 19, 2006)........................................................................................................... 5

*Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 984 N.E.2d 893, 960 N.Y.S.2d 695 (2012). 11

*Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574 (S.D.N.Y. 2015) ................................................................................................................................................... 4

*Liz Claiborne, Inc. v. Mademoiselle Knitwear*, 979 F. Supp. 224 (S.D.N.Y. 1997) ................... 10

*M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 U.S. Dist. LEXIS 51997, 2008 WL 2696168 (S.D.N.Y. July 7, 2008) ........................................................................................................... 11

*Mattel, Inc. v. Adventure Apparel*, No. 00-CV-4085, 2001 U.S. Dist. LEXIS 3179, 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001) .......................................................................................... 11

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ....... 12

*Nat'l Football League v. Miller*,2000 U.S. Dist. LEXIS 3929, 2000 WL 335566 (S.D.N.Y.)..... 12

*Nike, Inc. v. Wu*, No. 13cv08012 (CM) (DF), 2018 U.S. Dist. LEXIS 158174 (S.D.N.Y. Sep. 11, 2018) ......................................................................................................................................... 11

*Parrish v. Sollecito,* 253 F. Supp. 2d 713 (S.D.N.Y. 2003) ........................................................ 4

*Penguin Grp. (USA) Inc. v. Am Buddha*, 946 N.E.2d 159 (2011), ............................................... 6

*Pettiford v. Devito*, 2020 U.S. Dist. LEXIS 73989 (S.D.N.Y. Apr. 27, 2020) .............................. 4

*Philip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 17, 2004). 10

*Segal v. Bitar*, 2012 U.S. Dist. LEXIS 10812 (S.D.N.Y. Jan. 30, 2012)..................................... 13

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .......................................................... 4

*Space Hunters, Inc. v. United States*, 500 F. App'x 76 (2d Cir. 2012) ............................................ 5

*Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, 2000 WL 1290585 (S.D.N.Y.) .................................................................................................. 12

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370 (2d Cir. 2001) ...................................... 5

*Vincent v. Money Store*, No. 03-CV-2876, 2011 U.S. Dist. LEXIS 111512 (S.D.N.Y. Sept. 29, 2011) ........................................................................................................................................ 5

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) .......................... 4

*Warner Bros. Entm't. Inc. v. Ideal World Direct*, 516 F.Supp. 2d 261 (S.D.N.Y. 2007) ............. 12

**Statutes**
N.Y. C.P.L.R. § 302(a)(1) ........................................................................................................... 8

N.Y. C.P.L.R. § 302(a)(3)(ii) .................................................................................................. 5, 7

**Rules**
Local Civil Rule 6.3 ..................................................................................................................... 4

## GLOSSARY

| Term | Definition | Docket Entry No. |
|------|-----------|------------------|
| **Plaintiff or American Girl** | American Girl, LLC | N/A |
| **Defendants** | Zembrka d/b/a www.zembrka.com and www.daibh-idh.com; www.zembrka.com; and www.daibh-idh.com | N/A |
| **Shoplazza** | Shenzhen Dianjiang Technology Co., Ltd. d/b/a Shoplazza, a Chinese company, with addresses of 3rd Floor, Xindaxin Department Store, No. 95 Zhengyi Road, Wuhua District, Kunming and 4th Floor, Office Building 11, West Gate, Wutong Island, Baoan District, Shenzhen, and any and all affiliated companies, which operates an e-commerce platform, available at www.shoplazza.com, that enables users, and specifically, Chinese brands, to build websites, create online stores, and manage and market their businesses, among other things | N/A |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff | N/A |
| **Complaint** | Plaintiff's instant Complaint | 1 |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery | 13-16 |

| | | |
|---|---|---|
| **Moore Dec.** | Declaration of Michael Moore in Support of Plaintiff's Application | 16 |
| **Drangel Dec.** | Declaration of Jason M. Drangel in Support of Plaintiff's Application | 15 |
| **American Girl Products** | Plaintiff's line of dolls, books and doll accessories that are intended to teach girls important lessons about America's history and foster pride in the traditions of growing up as a female in America | N/A |
| **American Girl Registrations** | U.S. Trademark Registration Nos.: 2,200,654 for "AMERICAN GIRL" for goods in Class 28; 5,242,074 for ☆AmericanGirl for services in Class 35; 5,182,399 for ☆AmericanGirl for goods in Class 28; 4,602,105 for bitty☆ baby for goods in Class 28; 6,048,795 for "JOSS" for goods in Class 28; 4,709,256 for "JULIE ALBRIGHT" for goods in Class 28; 2,664,434 for "KAYA" for goods in Class 28; 4,909,555 for "MARYELLEN" for goods in Class 28; 5,101,208 for "MELODY ELLISON" for goods in Class 28; 3,677,824 for "REBECCA" for goods in Class 28; and 3,499,063 for "SAMANTHA PARKINGTON" for goods in Class 28 | N/A |
| **American Girl Marks** | The marks covered by the American Girl Registrations | N/A |
| **Plaintiff's Website** | Plaintiff's fully interactive website available at www.americangirl.com | N/A |
| **Counterfeit Products** | Products bearing or used in connection with the American Girl Marks, and/or products in packaging and/or containing labels bearing the American Girl Marks, and/or bearing or used in connection with marks that are confusingly similar | N/A |

| | to the American Girl Marks and/or products that are identical or confusingly similar to the American Girl Products | |
|---|---|---|
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.zembrka.com; www.daibh-idh.com, www.vanadim.com; and www.seaborgy.com, along with the domain names associated therewith | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any of Defendants' Websites (whether said accounts are located in the U.S. or abroad) | N/A |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong"), Stripe Payments Canada, Ltd. ("Stripe") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |

| | | |
|---|---|---|
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Counterfeit Products and and/or Defendants' Websites, including, without limitation, Shoplazza, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts, such as Cloudflare, Inc., domain name registrars, such as GoDaddy.com, LLC ("GoDaddy"), and domain name registries | N/A |
| **TRO** | Judge Mary Kay Vyskocil's March 18, 2021 temporary restraining order; order restraining Defendants' Websites and Defendants' Assets with the Financial Institutions; order to show cause why a preliminary injunction should not issue; order authorizing bifurcated and alternative service; and order authorizing expedited discovery | 17 |
| **OTSC Hearing** | The telephonic order to show cause hearing before Judge Mary Kay Vyskocil regarding why a preliminary injunction should not be entered, held on April 14, 2021 at 2:30 PM | N/A |
| **Defendants' MTD** | Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2), b(5), to Dissolve Temporary Restraining Order and to Oppose Entry of A Preliminary Injunction, and all paperwork filed in support thereof | 23, 31 |
| **Defendants' Affidavits** | The Affidavits of Wanglin Yu, Yanmei Yu, and Yi Fang, submitted in connection with Defendants' MTD | 23-2, 23-3, 23-4 |
| **Plaintiff's Opposition Brief** | Plaintiff's Memorandum of Law in Opposition to Defendants' MTD | 28 |

| **Moore Dec. II** | Declaration of Michael Moore and Accompanying Exhibit in Support of Plaintiff's Opposition to Defendant's Motion | 29 |
|---|---|---|
| **Brownlee Dec.** | Declaration of Kerry B. Brownlee in Support of Plaintiff's Opposition to Defendant's Motion | 30 |
| **4/28 Order** | Judge Mary Kay Vyskocil's April 28, 2021 Opinion and Order Dismissing Case for Lack of Personal Jurisdiction | 32 |
| **Drangel Dec. II** | Declaration of Jason M. Drangel in Support of Plaintiff's Motion for Reconsideration of Defendants' Motion to Dismiss, submitted simultaneously herewith | TBD |
| **Dangelo Dec.** | Declaration of Rita Dangelo in Support of Plaintiff's Motion for Reconsideration of Defendants' Motion to Dismiss, submitted simultaneously herewith | TBD |

Pursuant to Local Civil Rule 6.3, Plaintiff[1], through its undersigned counsel, hereby respectfully submits this Memorandum of Law in Support of its Motion for Reconsideration regarding the Court's 4/28 Order.

## I.   <u>INTRODUCTION</u>

In connection with Defendants' MTD, Defendants submitted Defendants' Affidavits, all three (3) of which are nearly identical, entirely self-serving, and evasive with respect to the full history of Defendants' transactions with New York customers.  Counsel for Defendants also made representations to this Court at the OTSC Hearing that Defendants "have never made sales of those dolls [the Counterfeit Products] to the United States" (Tr., 16:23-25), "the current policy is that no products are offered for sale to the United States" (Tr., 17:20-21), and "the money [from U.S. transactions], if paid, would be refunded, as that's inconsistent with company policy" (Tr., 17:25-18:1), among other things.  However, after Plaintiff recently attained new evidence from PayPal, which demonstrates, among other things, that Defendants made sales of Counterfeit Products to thirty-eight (38) New York customers (excluding Plaintiff's counsel)—sales that were largely only refunded *after* the entry of the TRO—it is abundantly clear that Defendants' submissions to this Court were deliberately selective, and Defendants' counsel representations were misleading, at best, and made with the intent to evade this Court's jurisdiction.  Plaintiff respectfully submits that such new evidence, which was not in its possession prior to the Court's 4/28 Order, justifies reconsideration of Defendants' MTD and the Court's 4/28 Order relating to the same.

---

[1] Where a defined term is referenced and not defined herein, the defined term should be understood as it is defined in the Glossary.

1

## II.   ABBREVIATED PROCEDURAL HISTORY & RELEVANT FACTS

### A.  BRIEF PROCEDURAL HISTORY

On March 18, 2021, Plaintiff filed this action for trademark infringement and counterfeiting of Plaintiff's American Girl Marks, and false designation of origin and unfair competition (the "Action") and moved *ex parte* against Defendants for: 1) a temporary restraining order; 2) an order restraining assets and Defendants' Websites and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing alternative service; and 5) an order authorizing expedited discovery. *Docket Entry Nos. 13-16*.  On that same day, the Court granted Plaintiff's Application and entered the TRO.  As part of the TRO, the Court ordered Defendants to show cause why a preliminary injunction should not be entered at the OTSC Hearing on April 14, 2021.  *See* TRO.

On April 2, 2021, Defendants' counsel contacted Plaintiff's counsel's office, and advised Plaintiff of Glacier Law PLLC's representation of Defendants in this Action.  Brownlee Dec., ¶ 19.  Despite Defendants' notice of this Action and the TRO, on the day of the OTSC Hearing, Defendants submitted Defendants' MTD, which was untimely.  Nevertheless, during the OTSC Hearing, the Court scheduled briefing on Defendants' MTD, and ultimately, on April 28, 2021, the Court granted the same.  *See* 4/28 Order.

### B.  BRIEF RELEVANT FACTS

On March 11, 2021, March 12, 2021, March 18, 2021, and March 22, 2021, Epstein Drangel placed test buys for Counterfeit Products, specifying an address in New York as the shipping address, from each of Defendants' Websites.  Drangel Dec., ¶ 13, Ex. A; Brownlee Dec., ¶ 9, Ex. A.  On April 10, 2021 (i.e., nearly one month later and after Defendants retained counsel), Epstein Drangel was refunded for such test purchases.  Brownlee Dec., ¶ 20.

2

After the entry of the TRO, Plaintiff was able to obtain certain expedited discovery from Third Party Service Providers and Financial Institutions, including PayPal.   *See* TRO. Specifically, on March 19, 2021, and April 6, 2021, Epstein Drangel received notification of PayPal's compliance with the TRO, and certain summary reports containing basic account information.  Drangel Dec. II, ¶¶ 5-6.  Prior to the Court's 4/28 Order, however, Plaintiff was unable, despite its efforts, to obtain discovery relating to Defendants' transactions and/or sales relating to New York customers, from Defendants, PayPal, or otherwise.  *See* Drangel Dec. II, ¶ 8.

After the issuance of the Court's 4/28 Order, Plaintiff received spreadsheets from PayPal (the "PayPal Reports") pertaining to three (3) of Defendants' PayPal accounts (the "PayPal Accounts"), which show tens of thousands of transactions in connection with Defendants' sales of goods over the past year, including Defendants' Counterfeit Products, using Defendants' PayPal Accounts, without any geographic restrictions whatsoever, including hundreds of transactions involving New York consumers.  Drangel Dec. II, ¶¶ 16-17.  Of specific relevance, the PayPal Reports demonstrate that thirty-eight (38) discrete New York customers purchased Counterfeit Products (excluding Epstein Drangel) through Defendants' Websites (the "Relevant New York Customers").  *Id.* at ¶ 18.  While it appears that none of the Relevant New York Customers received the Counterfeit Products, given that the PayPal Reports reflect that the thirty-eight (38) Relevant New York Customers were eventually refunded by Defendants, and a small handful of transactions were cancelled, the vast majority of Relevant New York Customers only received refunds after the TRO was entered, and after Defendants retained counsel.  *Id.* at ¶ 18-19.

3

### III.   <u>ARGUMENT</u>

#### A.  LEGAL STANDARD

"The decision to grant or deny [a motion for reconsideration under Local Civil Rule 6.3] is within the sound discretion of the district court." *Pettiford v. Devito*, 2020 U.S. Dist. LEXIS 73989, \*2 (S.D.N.Y. Apr. 27, 2020), citing *DelleFave v. Access Temporaries, Inc.*, No. 99 CIV. 6098(RWS), 2001 U.S. Dist. LEXIS 3165, 2001 WL 286771, at \*1 (S.D.N.Y. Mar. 22, 2001). Under Local Civil Rule 6.3, the movant must serve any such motion within fourteen (14) days after the Court's determination on the original motion, and set forth the "matters or controlling decisions which counsel believes the Court has overlooked."  While the decision to grant or deny any such motion is discretionary, reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *In re Health Mgmt. Sys., Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quotation omitted).  Typically, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).   A motion for reconsideration is not, however, an opportunity to "relitigate an issue already decided," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or to "advance new theories that the movant failed to advance in connection with the underlying motion." *Parrish v. Sollecito,* 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003).

In order for new evidence to justify reconsideration, it must be "evidence that was truly newly discovered or could not have been found by due diligence."  *Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015), citing *Space Hunters,*

4

*Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (internal quotation marks omitted). The onus is on the moving party to show that the "new evidence was not available when the original motion was submitted" and not available upon the "exercise of reasonable diligence". *LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*, 2006 U.S. Dist. LEXIS 2600, *7 (S.D.N.Y. Jan. 19, 2006).

### B. PLAINTIFF'S MOTION IS TIMELY & JUSTIFIED BY NEW EVIDENCE

As a threshold matter, Plaintiff's request for reconsideration is timely, given that it has been filed within fourteen (14) days of the Court's 4/28 Order (i.e., by Wednesday, May 12, 2021). Moreover, it is based on new evidence from PayPal—evidence that is not publicly available and despite numerous efforts to obtain additional evidence, was not in Plaintiff's possession prior to the Court's 4/28 Order—that establishes Defendants' further contacts with the State of New York, which Plaintiff respectfully submits alters the personal jurisdiction analysis, as set forth herein. *See* Drangel Dec. II, ¶¶ 5-6, 8, 11-14; *Vincent v. Money Store*, No. 03-CV-2876, 2011 U.S. Dist. LEXIS 111512, *26 (S.D.N.Y. Sept. 29, 2011), citing *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citations omitted) ("For new evidence to justify reconsideration, the evidence must be 'of such importance that it probably would have changed the outcome' of the prior ruling."); *Cf Garraway v. Newcomb*, 154 F. App'x 258 (2d Cir. 2005) (upholding denial of request for reconsideration when the new evidence that the moving party sought to introduce was available at the time the original motion was filed).

### C. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

#### 1. New Discovery Produced by PayPal Establishes Cognizable Injury in New York Under N.Y. C.P.L.R. § 302(a)(3)(ii)

In analyzing personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), the Court previously found that Plaintiff "established the existence of a tortious act and a connection between the

tortious act and the claims in this case"; however, Plaintiff had not established "injury in New York for the purposes of personal jurisdiction." 4/28 Order, p. 15. The Court's decision was based, in part,[2] on its finding that Plaintiff "has failed to allege or offer any evidence of any New York customers who were confused by the alleged counterfeits or who purchased them." 4/28 Order, p. 16.

Now, Plaintiff has procured specific evidence of thirty-eight (38) discrete Relevant New York Customers (excluding Plaintiff's counsel) that purchased Counterfeit Products from Defendants' Websites—websites that prominently use the American Girl Marks thereon, are deliberately intended to look like they emanate from Plaintiff, and are exclusively devoted to the offering for sale of Counterfeit Products. Drangel Dec. II, ¶ 18; *see* Moore Dec., ¶ 21, Ex. C. Given that Defendants have, at the very least, unquestionably used counterfeit marks in connection with Defendants' Websites and the offering for sale of the Counterfeit Products, consumer confusion among the Relevant New York Customers can be inferred. *See Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422 (S.D.N.Y. 2020) (noting that, in cases involving counterfeit marks, consumer confusion is presumed, given that such marks are "inherently confusing"). Regardless, Plaintiff now has specific evidence from one (1) Relevant New York Customer that she purchased Counterfeit Products, believing that they were authentic American Girl Products (i.e., evidence of actual consumer confusion, even though such evidence is not required). *See* Dangelo Dec., ¶ 5.[3]

---

[2] The Court also suggested that the situs of the injury, based on *Penguin Grp. (USA) Inc. v. Am Buddha*, 946 N.E.2d 159 (2011), could be the location of the rights holder (i.e., Plaintiff); however also acknowledged that *Penguin Group* may not be dispositive of the issue. As noted in Plaintiff's Opposition Brief, in trademark cases such as this, courts have found injury in New York based on the confusion or deception of New York consumers. *See, e.g., Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) and *Am. Network v. Access Am. / Connect Atlanta*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997); *see also Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013) (noting the narrow holding of the *Penguin Group* decision).
[3] In addition, the PayPal Reports also provide evidence of actual confusion among additional consumers, albeit relating to consumers without the State of New York. Drangel Dec. II, ¶ 22.

Consequently, the new evidence received from PayPal, coupled with the Dangelo Dec., establishes injury within the State of New York—a pivotal market for Plaintiff.  *See* Plaintiff's Opposition Brief, p. 11; *see also Energy Brands Inc.*, 571 F. Supp. 2d 458 (finding that actual or potential confusion of New York computer users lends support to injury within New York); *see also Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) (collecting cases standing for the proposition that "injury in the form of lost sales or lost customers may constitute injury for the purpose of Section 302(a)(3), but only if those lost sales or lost customers are within the New York market"); *Cf Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 U.S. Dist. LEXIS 72282 (S.D.N.Y. Apr. 30, 2018) ("*Alibabacoin*") (finding no injury in New York under an economic tort theory where, unlike here, actual or potential injury in the New York market was not alleged).

In light of the Court's finding on a lack of injury in New York, it did not reach the last two (2) elements of N.Y. C.P.L.R. § 302(a)(3)(ii) (i.e., the reasonable expectation of consequences in New York, and whether or not Defendants made substantial revenue from interstate or international commerce).  Nevertheless, the additional data received from PayPal lends further support to these last two (2) factors.  Specifically, since Plaintiff now has specific evidence that Defendants have accepted orders from, and processed the data of, thirty-eight (38) Relevant New York Customers, Defendants should reasonably have expected their acts to have consequences in New York.[4]  Drangel Dec. II, ¶ 18.  Further, as evidenced by records previously provided by PayPal, and as indicated in Plaintiff's Opposition Brief (pp. 11-12), it is irrefutable that Defendants

---

[4] Defendants indicate that they do not ship the Counterfeit Products to "anyone including anyone in New York." Affidavits, ¶ 17.  During the OTSC Hearing, Defendants' counsel indicated that if payment was received from U.S. customers, such customers would be refunded.  Transcript, 17:25-18:1.  If it is truly Defendants' practice to issue refunds to consumers located in the U.S., and in New York, Defendants must be aware of the geographic location of their consumers, including that a number of consumer are located in New York.

derive substantial revenue from interstate or international commerce.  Brownlee Dec., ¶ 13;

Drangel Dec. II, ¶¶ 17-18; *see also Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist.

LEXIS 4870 (S.D.N.Y. Apr. 23, 2001) (finding these two factors satisfied when the defendant

used its website to attract business across the nation, including in New York, and derived

substantial revenue from interstate sales).

> ### 2. New Discovery Produced by PayPal Further Establishes That Defendants Have Transacted Business in New York Under N.Y. C.P.L.R. § 302(a)(1)

With respect to this Court's finding that it lacked personal jurisdiction over Defendants

pursuant to N.Y. C.P.L.R. § 302(a)(1), the Court found that there was "no record evidence to

suggest that any product has been shipped to or received in New York." 4/28 Order, p. 11.  As

discussed above in detail, the new evidence provided by PayPal reflects, despite Defendants'

contentions that "the current policy is that no products are offered for sale to the United States"[5],

that Defendants processed over 700 transactions with New York consumers for various products

over the past one (1) year, some of which are believed to have been shipped to New York, and

have accepted orders from, and processed the data of, thirty-eight (38) Relevant New York

Customers for the Counterfeit Products at issue in this Action. Drangel Dec. II, ¶¶ 16-17.

Accordingly, that the Counterfeit Products were not actually shipped to or received by the thirty-

eight (38) Relevant New York Customers that ordered them is not dispositive.

The preliminary inquiry in analyzing if a defendant's internet activity rises to the level of

purposeful activity sufficient to satisfy Section 302(a)(1) involves applying a "sliding scale" test

based on the level of a website's interactivity.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252

(2d Cir. 2007).  A website that merely passively provides information that is accessed by

---

[5] *See* Transcript of OTSC Hearing, 17:18-23.

individuals in New York is not grounds for the exercise of personal jurisdiction. *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006) ("Internet websites that are not of a commercial nature and do not ***permit the purchase of products on-line*** are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1).") (collecting cases) (emphasis added). "However, if a website is interactive and ***allows a buyer in New York to submit an order online***, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088, at *9 (E.D.N.Y. June 4, 2012) (emphasis added). Thus, based on much of the relevant case law in this district, it is the mere ability for a New York consumer to purchase a product directly through a website that determines its level of interactivity. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant).

Here, Defendants are unquestionably operating highly interactive websites through which hundreds of New York consumers have been permitted and/or allowed to submit orders for various products over the past year[6], generating over $40,000 in sales and specifically, thirty-eight (38) Relevant New York Customers have been permitted and/or allowed to submit orders for Counterfeit Products and Defendants processed transactions for almost $4,000 in connection with such orders. Drangel Dec. II, ¶¶ 17-18. In addition, on Defendants' Websites, which are highly interactive, Defendants express prices in U.S. dollars, accept payment via U.S. payment

---

[6] Notably, in *Chloe*, the Second Circuit held that "the District Court's characterization of Defendants' non-Chloe sales as constituting purposeful availment of New York for *some* business activity, but not for the purpose of selling Chloe handbags--the only activity upon which Plaintiffs' complaint is based too narrowly constru[ed] the nexus requirement," and went on to find that the Queen Bee website "sold other designer merchandise to New York consumers… show[ed] that the shipment of a counterfeit Chloe bag was not, as the district court thought, a one-off transaction, but rather a part of a larger business plan purposefully directed at New York consumers." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010) (internal citations and quotations omitted). Accordingly, Defendants' 700 transactions with New York consumers are highly relevant here.

9

processors, and hold themselves out as capable of shipping Counterfeit Products to consumers in the United States, including those in the State of New York.  *See* Moore Dec., ¶ 21, Ex. C.  That Defendants have engaged in a fraudulent scheme whereby they are offering for sale[7] and knowingly and intentionally processing transactions for the sale of Counterfeit Products—products which they have confirmed by Defendants' Affidavits to this Court that they have "never manufactured made or purchased" (Defendants' Affidavits, ¶ 16) and therefore, never intended to or actually did ship anywhere—should not alone prevent this Court from finding jurisdiction over Defendants.  Beyond merely operating Defendants' Websites that can be accessed in New York, Defendants have: (1) advertised, marketed, promoted, and offered for sale Counterfeit Products via Defendants' Websites, as well as third party platforms such as Facebook, which Defendants have made available to consumers in New York; (2) allowed consumers, including those in the State of New York, to purchase products, including the Counterfeit Products directly via Defendants' Websites; (3) allowed consumers, including those in the State of New York, to exchange information with Defendants via Defendants' Websites; and (4) knowingly processed at least 700 transactions involving New York consumers, including the thirty-eight (38) Relevant New York Consumers.[8]  *See* Complaint, ¶¶ 27-28, 32, 33, Exs. C-D; Moore Dec., ¶ 21, Ex. C; Drangel Dec., ¶¶ 13-14, Ex. A; Drangel Dec. II, ¶¶ 17-18.[9]

---

[7] *See Chanel, Inc.*, 449 F. Supp. 3d at 438 (citing *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2019 U.S. Dist. LEXIS 194268, 2019 WL 5696148, at *7 (E.D.N.Y. Sept. 30, 2019)) (Strict liability under the Lanham Act does not turn on whether a defendant physically possessed the goods . . .[and] liability may be premised on the 'the sale, *offering for sale*, distribution, or advertising of any goods or services.'" (emphasis added); *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear*, 979 F. Supp. 224, 231 (S.D.N.Y. 1997)("The Lanham Act provides that merely 'offering for sale' a good is sufficient to find liability."); *Philip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *19 (S.D.N.Y. June 17, 2004) ("The fact that Felizardo failed to consummate a sale with Bello is immaterial as the act of 'offering for sale' suffices to impose liability.").

[8] *See* note 4 *supra*.

[9] While the transactions for the Counterfeit Products made with the thirty-eight (38) Relevant New York Customers were cancelled or refunded by Defendants, despite the fact that most of the Relevant New York Customers' purchases were in March 2021, the vast majority of the Relevant New York Customers were not refunded by Defendants until

Moreover, "[n]o single factor concerning the first prong of CPLR § 302(a)(1) is dispositive, as what facts constitute 'purposeful availment' is an objective inquiry[] [that] always requires a court to closely examine the [entity's] contacts for their quality." *Nike, Inc. v. Wu*, No. 13cv08012 (CM) (DF), 2018 U.S. Dist. LEXIS 158174, at *26 (S.D.N.Y. Sep. 11, 2018) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 960 N.Y.S.2d 695 (2012). While the actual shipment of products was a single factor in several district courts' analysis of whether or not a defendant "transacted business" within the meaning of 302(a)(1), those courts' holdings did not rely on shipment of an infringing product alone. *See e.g., Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009)(personal jurisdiction exercised over a Florida company that made a single sale to a New York resident and advertised its counterfeit products in Skymall, the airline magazine); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 U.S. Dist. LEXIS 51997, 2008 WL 2696168, at *5 (S.D.N.Y. July 7, 2008) (finding section 302 (a)(1) jurisdiction over defendants because interactive website was primarily used to effect commercial transactions; even though website did not target New York market and 10% of website's revenue was derived from New York consumers); *see also Mattel, Inc. v. Adventure Apparel*, No. 00-CV-4085, 2001 U.S. Dist. LEXIS 3179, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (finding that the plaintiff's "order[ing] allegedly infringing merchandise from Adventure over its web site, using his credit card, and Adventure['s] shipp[ing] that merchandise into New York" was "sufficient to bring Adventure into the category of a defendant 'transact[ing] any business,' via the internet, in New York within the meaning of N.Y. C.P.L.R. 302(a)(1)" because "[t]his activity not only involved

---

mid-April (i.e., well after the TRO was entered and Defendants retained counsel). *See Energy Brands Inc. v* 571 F. Supp. 2d at 470 ("The fact that defendants changed their website *after* the complaint was filed to remove any elements that support a finding of personal jurisdiction is inconsequential.") (emphasis in original).

the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line").

Allowing the exercise of personal jurisdiction under 302 (a)(1) to turn entirely on whether or not a product was actually shipped and received runs counter to numerous decisions in this Circuit wherein courts have found personal jurisdiction where the "transaction of business" includes sales, banking transactions, submissions of orders and/or submissions of applications with respect to intangibles[10] (i.e., cases in which nothing ever shipped to any consumer in New York). *See e.g. McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) (finding personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online for digital copies); *Warner Bros. Entm't. Inc. v. Ideal World Direct*, 516 F.Supp. 2d 261, 265 (S.D.N.Y. 2007) (finding the transmission of digital files in exchange for membership fees sufficient for jurisdiction under Section 302(a)(1)); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (finding that foreign defendant transacted business in New York when its website allowed New York customers to apply for loans on the Internet, electronically chat with an online representative, and e-mail questions to the defendant and receive a rapid response); and *Segal v. Bitar*, 2012 U.S. Dist. LEXIS 10812, at *10-17

---

[10] Moreover, courts also frequently find personal jurisdiction in cases where the websites are those occupying the "middle ground" of the sliding scale "in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant," but does not even allow for the direct purchase of products, "depending on the level and nature of the exchange" *See Citigroup Inc.*, 97 F. Supp. 2d at 565 (finding § 302(a)(1) jurisdiction over a website that allowed users to apply for loans, print out applications to submit by facsimile, chat online with representatives, and e-mail questions); *see also Capitol Records, Inc. v. MP3tunes,LLC*, No. 07 Civ. 9931 (WHP), 2008 U.S. Dist. LEXIS 75329, 2008 WL 4450259, at *3 (S.D.N.Y. Sept. 29, 2008) (finding personal jurisdiction based on transfer of files over the internet with customers in New York); *Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.,*2000 U.S. Dist. LEXIS 13138, 2000 WL 1290585, *4 (S.D.N.Y.) (finding transaction of business in New York where out-of-state website permitted New York viewer to purchase products by providing payment and shipping information online); and *Nat'l Football League v. Miller,*2000 U.S. Dist. LEXIS 3929, 2000 WL 335566, *2 (S.D.N.Y.) (finding transaction of business in New York where out-of-state website was regularly visited by New Yorkers and generated substantial income from advertisers that bought space on the website).

(S.D.N.Y. Jan. 30, 2012) (finding that a gambling website satisfied the "transacts any business" prong of the §302(a)(1) where they allowed New York residents to purchase the company's services while in the state and consume those services while sitting in their New York residences).

Finally, this Court relied on *Alibabacoin* to reach the conclusion that, "simply operating a website, absent more, is insufficient to establish that Defendants 'transact business' in New York within the meaning of C.P.L.R. § 302(a)(1) sufficient to subject a defendant to jurisdiction in New York". 4/28 Order, p. 13. In *Alibabacoin*, despite finding that Alibabacoin's websites are highly interactive and have "significant commercial elements," the Court held that, "Alibaba cannot base jurisdiction on Alibabacoin's interactive websites because Alibaba has not established a reasonable probability that these websites have been actually used to effect commercial transactions with customers in New York." *Id.* at *10 (internal citations omitted). However, particularly based on the new information contained in the PayPal Reports, this case is distinguishable from *Alibabacoin*, since in the aggregate, all of Defendants' websites, including Defendants' Websites, have in fact been used to effect hundreds of commercial transactions in New York, including transactions with thirty-eight (38) Relevant New York Consumers.

## IV.   CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this Court reconsider its dismissal of this Action for a want of personal jurisdiction.

Dated: May 12, 2021                                    Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:    /S Kerry B. Brownlee
       Kerry B. Brownlee (KB 0823)

13

kbrownlee@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*American Girl, LLC*

14